**Wilbert L. CAVIN, Appellant,**

v.

**LAKE CONSTRUCTION COMPANY et al., Appellee.**

Court of Appeals of Kentucky.

Feb. 27, 1970.

Paul D. Ross, Jenkins & Ross, Lexington, for appellant.

W. R. Patterson, Jr., Landrum & Patterson, Lexington, Thomas R. Emerson, Dept. of Labor, J. Keller Whitaker, Workmen's Compensation Board, Frankfort, for appellee.

PALMORE, Judge.

Wilbert L. Cavin appeals from a judgment of the Fayette Circuit Court affirming an order of the Workmen's Compensation Board rejecting his claim for disability benefits. KRS 342.285, 342.290. He contends (1) that the evidence requires a finding that he is totally and permanently disabled as the result of a work-connected injury which "lighted up" a pre-existing but theretofore non-disabling disease condition of the spine and (2) that it was error for the board to allow medical expenses under KRS 342.020 without also finding that he had sustained a compensable disability.

On July 29, 1967, Cavin was working for the appellee Lake Construction Company as a common laborer. He tripped and fell into a ditch while carrying an 80-lb. jackhammer on his shoulder. He was cut, skinned and bruised and suffered pain in the neck and back, but was able to continue working. He remained on the job with the same employer until Christmas of 1967 but says he did lighter work. Meanwhile, he was treated by a Dr. Stevenson, who did not testify in this proceeding. On August 5, 1967, a week after the accident, X rays of his spine were made at a Lexington hospital.

On January 25, 1968, Cavin went to Dr. W. G. Wheeler, Jr., an orthopedic surgeon of Lexington, for examination and treatment. In the course of his examination Dr. Wheeler took X-ray photographs of the patient's neck, and at some time, either then or later, viewed the X rays that had been made on August 5, 1967.

Dr. Wheeler found that Cavin "had some facet joint disease of C2–3. Now, this is arthritis of his cervical spine in a moderately limited area there in his neck, and on special X-rays in flexion and extension of his neck this particular area did not move, which indicated that he had a degree of fibrous ankylosis of this joint * * * and we felt he had a cervical spondylitis of the 2d and 3d cervical vertebrae." Dr. Wheeler prescribed a conservative treatment to be carried out at home and asked Cavin to come in again in a week, but he did not return until March 4, 1968, at which time he was complaining of pain in the neck and back. A careful examination of the low back area disclosed no objective evidence of any injury or neurological difficulty. The patient was advised to continue, with increased frequency, the cervical treatment theretofore recommended and to return in four weeks. He did not return, so that is the last time Dr. Wheeler saw him.

On the basis of the X rays made on August 5, 1967, Dr. Wheeler was of the opinion that Cavin then had the cervical condition later disclosed by his own examination and X rays of January 25, 1969, and that it existed prior to the accident of July 29, 1967. He thought that probably the fall had aggravated it, but would not give an opinion as to whether or to what extent Cavin was disabled as of the time of the deposition.

On July 23, 1968, Dr. T. Rothrock Miller, another orthopedic surgeon of Lexing-

ton, examined the claimant pursuant to a KRS 342.121 order of reference.

Dr. Miller reported finding two spinal conditions, one in the cervical area and the other in the low back. He characterized the latter as a Marie-Strumpell type of arthritis, and although he was later questioned rather extensively on the subject, this particular condition really was and is immaterial, since he stated in substance that it probably was not related to or affected by any traumatic experience, including the accident of July 29, 1967, and he did not attribute any degree of disability to it. Dr. Miller also discovered substantially the same cervical deformity theretofore reported and described by Dr. Wheeler. However, he did not have before him the X rays made on August 5, 1967, a week after the accident, which disclosed the existence of the same condition at that time, and he assumed that it had developed from the accident. On this basis he concluded that the injury had produced a bodily disability of 10% to 20%. He found the claimant totally and permanently disabled for hard physical labor and attributed the balance between 10% and 20% and 100% to a "pre-existing condition being aroused into disabling reality."

During the course of his subsequent testimony Dr. Miller said that if, as Dr. Wheeler had testified, the cervical changes observed by him were present on August 5, 1967, they could not have resulted from the accident but must have pre-existed it, in which event it was his opinion that the 10% to 20% disability first mentioned by him had resulted not from the traumatic experience of July 29, 1967, but "would have been an arousal into disabling reality of a pre-existing condition, rather than the initiation of a new and separate condition. * * * I think that that must be changed to the extent of saying that it is quite possible, if not probable, that the injury of July 29, 1967, *may have produced no disability whatsoever, and that the disability resulting from that was wholly and totally*

*on the basis of the arousal into disabling reality of the pre-existing condition."* (Emphasis added.)

We are somewhat confounded by this ambiguous statement, which seems to (but does not necessarily) imply that traumatic "arousal" or aggravation of a dormant pre-existing condition into a disability can be disregarded as a causal factor. It is unfortunate that the subject was not pursued by further questioning of the witness. The burden, of course, was on the claimant, and in the absence of further elucidation Dr. Miller's statement is capable of being interpreted as meaning that the pre-existing condition was not affected by the accident, but was aroused into disabling reality by natural degenerative processes unrelated to the work-connected trauma.

■ That was all of the medical evidence adduced in the proceeding. There was lay testimony pro and con as to whether Cavin could and did perform his regular work in the usual manner for some time after July 29, 1967. His employer testified that he was able to do it well enough that his job was still open for him if he wanted it. But Cavin says his neck hurts too much. Dr. Miller confirms that he is totally disabled. He was 49 years old and in good health at the time of the accident. There is no evidence that he had experienced any previous physical difficulty. One would assume, and the board certainly could have found, that the accident had some contributive relationship to the rather rapid deterioration of his physical condition thereafter. But as we have observed in other cases, there is a vast difference between what the board is free to do and what it can be forced to do under a given state of the evidence. In this case we must conclude that the evidence on *causation* was not sufficiently strong and unequivocal to force a checkmate.

■ We do not believe it is necessarily inconsistent for the board to award payment of medical expenses without finding some extent of disability. It is not im-

possible for a non-disabling injury to require medical attention. In any event, since we hold that the board was not obliged to find a compensable disability, the only party who was in a position to complain about the medical expenses was the employer, who did not appeal.

The judgment is affirmed.

All concur.