**Gertrude THACKER, Administratrix of the Estate of John Thacker, Appellant,**

v.

**REPUBLIC STEEL CORP., Workmen's Compensation Board of Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

May 12, 1972.

Rehearing Denied Oct. 6, 1972.

Dan Jack Combs, Reed D. Anderson, Combs & Anderson, Pikeville, for appellant.

Gemma M. Harding, Department of Labor, Louisville, Thomas R. Emerson, Department of Labor, Frankfort, Stratton, Johnson & May, Pikeville, for appellees.

PALMORE, Justice.

Gertrude Thacker, as administratrix of the estate of John Thacker, deceased, appeals from a judgment sustaining an order of the Workmen's Compensation Board denying recovery on a compensation claim filed by Thacker and tried before his death.

After working for more than 40 years in the coal mines Thacker was forced to quit by reason of a totally disabling lung condition. Doctors who examined him incident to the preparation and trial of his claim diagnosed the condition of his lungs as being substantially attributable to coal miner's pneumoconiosis. Two of these physicians had examined him at the request of the employer, which in its brief to the Board conceded that he had pneumoconiosis. Dr. William E. Anderson, a chest specialist of Louisville, examined Thacker in behalf of the Special Fund and found severe pulmonary emphysema, which in his opinion propably had been caused by the smoking of half a pack of cigarettes per day for over 40 years, but no evidence of pneumoconiosis. Dr. G. N. Combs, a radiologist called in the claimant's behalf, testified on the basis of both his own and Dr. Anderson's X rays that in his opinion the claimant had Stage II pneumoconiosis. After the case had been submitted and briefed the Board in effect set aside the submission and, by reason of the conflict in medical diagnoses, appointed Dr. Allen L. Cornish, an internist of Lexington, to examine the claimant and provide an independent report. Cf. KRS 342.315.

Dr. Cornish found no evidence either of pneumoconiosis or of emphysema, but was of the opinion that Thacker's principal difficulty was chronic bronchitis, probably caused by cigarette smoking or by exposure to dust in the mines.

In its opinion and trial order the Board observed that the medical evidence "preponderates to a finding that the plaintiff does not suffer from any occupational disease, and that all of his disability as a result of a heart condition * and chronic bronchitis." Its basic finding of fact was as follows:

"Plaintiff has failed to prove to the satisfaction of the Board that he suffers any disability as the result of the occupational disease of silicosis and/or pneumoconiosis."

Appellant's first argument is that the overwhelming weight of the evidence requires a finding in favor of the claim. In the face of testimony by two competent specialists stating categorically that in their opinions the claimant did not have pneumoconiosis we cannot accede to that contention. Though one found emphysema and no chronic bronchitis, and the other found chronic bronchitis but no emphysema, both found against pneumoconiosis. Emphysema and bronchitis are, of course, diseases to which the general public is exposed and are not specially related to coal mining. Cf. KRS 342.316(1) (a). Since both Dr. Anderson and Dr. Cornish testified directly that in their opinions Thacker did not have pneumoconiosis, Grimes v. Goodlett & Adams, Ky., 345 S.W.2d 47 (1961), in which the only physician testifying for the defense actually expressed no opinion one way or the other, is not applicable.

Thacker objected to the Board's action in appointing Dr. Cornish rather than proceeding to dispose of the claim on the basis of what had been introduced in evidence prior to the order of submission. After Dr. Cornish had reported his findings and had testified by deposition, and after the Board had entered its final order, Thacker moved for a reconsideration or, in the alternative, for permission to introduce rebuttal evidence upon the ground that the diagnosis of chronic bronchitis had introduced a new issue. This motion was denied. Thacker contends that the appoint-

* Most of the medical evidence was to the effect that the respiratory insufficiency had resulted in heart disease.

ment of Dr. Cornish under KRS 342.315 and the denial of an opportunity to rebut his testimony constituted arbitrary treatment, an abuse of the Board's discretion, and a violation of due process.

It is the appellant's position that "bronchitis" never entered the picture until it was injected by the Board through the appointment of Dr. Cornish. The fact is, however, that chronic bronchitis had been considered and discussed by Dr. Anderson, as follows:

> "[T]he only things that can cause as much disparity between the percentage of the maximum breathing capacity that he has is one of the types of chronic obstructive pulmonary diseases and these are asthma, emphysema, chronic bronchitis, and we can rule out asthma because he has no allergic history or seasonal variations to this, and we can rule out chronic bronchitis because he has not had cough or expectoration long enough to meet the minimum criteria for chronic bronchitis, so this leaves emphysema as the only cause. . . . As I indicated in response to Mr. Riehl's question, he does have sufficient exposure to cigarette smoking to be a competent cause of the emphysema, so that I attribute this to his somewhat more than 45 years of cigarette smoking."

Thus it may be seen that although Drs. Anderson and Cornish came to different conclusions with respect to the presence of chronic bronchitis, it can hardly be said that as a causal possibility it was beyond the scope of the inquiry until Dr. Cornish appeared on the scene. Under the circumstances we are not persuaded that the Board abused its discretion or violated any constitutional standards in appointing Dr. Cornish or in closing the hearing without permitting further evidence in rebuttal. Medicine is not yet an exact science, and the criteria for diagnosing the presence or absence of various diseases, including those of the lungs and heart, keep changing by the day. We do not think it necessary that hearings be kept going back and forth until each side has rebutted each theory advanced by every physician on the other side.

The facts of this case are quite similar to those in Tutor Key Coal Co. v. Daniel, Ky., 463 S.W.2d 932 (1971), in which the Board also appointed Dr. Cornish after an initial submission under conflicting evidence on the question of whether the claimant had silicosis, and in which, as here, Dr. Cornish found no evidence of pneumoconiosis or of pulmonary emphysema but was of the opinion that he was suffering from chronic bronchitis. In that case, however, the claimant offered to have a biopsy performed in order to resolve the issue, and this court held it an abuse of discretion for the Board to deny the motion, Dr. Cornish having conceded in his testimony that biopsy would be the most exact method of determining the presence of silicosis.

We do not think the principle of the *Tutor Key* case should be extended beyond its facts. There the claimant offered to submit to a dispositive surgical procedure. Here the claimant did not commit himself to do more than bring in more opinions.,

It is unfortunate that the Board saw fit to express an opinion to the effect that Thacker had chronic bronchitis. It was enough to find, as it did, that the evidence as a whole did not establish pneumoconiosis to its satisfaction. That was the issue, and since we are of the opinion that the evidence was not conclusive one way or the other, we do not feel free to disturb its judgment. Considering the strong evidence in Thacker's favor we concede that the Board might well have resolved the doubt in his favor, but the statutes do not give us the prerogative of doing it here.

A further contention is made to the effect that since the employer admitted that Thacker had established a compensable case it is liable as a matter of law for his medical expenses. KRS 342.020, 342.316 (13) (a). This was a case in which the compensation claimed, had it been allowed, would have been payable out of the Special

Fund. KRS 342.316(13) (a). The employer could not, of course, make an admission that would bind the Special Fund. As to the separate liability of the employer for medical expenses, though it has been recognized that it is not necessarily inconsistent for the Board to award medical expenses without finding some extent of disability, cf. Cavin v. Lake Construction Co., Ky., 451 S.W.2d 159, 161 (1970), we have not been referred to any precedent for allowing medical expenses where there has been no finding of a work-connected injury or disease. It seems to us that both the intent and express terminology of KRS 342.020(1) make the allowance of medical expenses dependent on the existence of an occupational disease or injury. Nevertheless, since the employer has not seen fit to dispute the point we are inclined to treat the claimant's position as conceded.

The judgment is affirmed in part and reversed in part with directions to award medical expenses.

All concur.