MRS. ROGER L. HAGY

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

U.S. STEEL CORPORATION

(No. 14335)

Decided June 12, 1979.

*Rodney A. Skeens* for appellant.

*Love, Wise, Robinson & Woodroe, George W. S. Grove, Jr.,* for appellee.

MILLER, JUSTICE:

Mrs. Roger L. Hagy, the claimant's widow, appeals an order of the State Workmen's Compensation Commissioner, affirmed by the Appeal Board, which refused her an award of permanent partial disability benefits and

retroactively terminated temporary total disability benefits as of April 1, 1976.

On July 2, 1975, the claimant sustained a compensable injury of fractures of the third and fourth fingers of his left hand. He was paid temporary total disability benefits while under the treatment of a Dr. Lee. On April 1, 1976, Dr. Lee advised the Commissioner that claimant had reached the maximum degree of recovery and requested that he be evaluated for permanent partial disability. The claimant was then referred by the Commissioner to a Dr. Fordham, who advised in a report dated August 11, 1976, that the claimant, as a result of the injuries to his hand and wrist and resulting atrophy of the forearm and biceps, had a 50 percent permanent partial disability.

Dr. Fordham determined that this disability rating was a result of three injuries which occurred at different times. The most severe injury resulted from an industrial accident in Virginia, where the claimant lost several fingers of his left hand. Dr. Fordham's ultimate conclusion was that it was difficult, if not impossible, to determine the percentage of the disability attributable to the current industrial injury to the third and fourth fingers.

After receiving Dr. Fordham's report, the Commissioner sought to obtain information from the Industrial Commission of Virginia on the claimant's injury in that State. In the meantime, the Commissioner made no award for permanent partial disability and continued paying the claimant temporary total disability benefits.[1]

By letter of November 2, 1976, the employer protested further payment of temporary total disability benefits after April 1, 1976, the date Dr. Lee found that claimant

---

[1]The Commissioner paid temporary total disability benefits during the time a protest to the eligibility for such benefits was being heard, apparently on the theory that W. Va. Code, 23-4-1c, was applicable. This Code section permits the Commissioner to continue payment of temporary total disability benefits where a protest has been made to them under W. Va. Code, 23-5-1.

had reached maximum degree of improvement. After two hearings, the last in September, 1977, the Commissioner, by an order entered October 20, 1977, terminated temporary total benefits as of April 1, 1976. This order also noted that the claimant had died on May 11, 1977, and "it is hereby ordered that this claim be closed and no further benefits be granted herein. . . ."

We first consider whether claimant's widow was entitled to a permanent partial disability award.

## I

There is no dispute that prior to the claimant's death on May 11, 1977, the Commissioner had made no award to him of permanent partial disability, nor is there any dispute that the cause of the claimant's death was unrelated to the industrial injury. Therefore, we need only determine whether the claimant's widow is entitled to receive permanent partial disability benefits when the claimant died of causes unrelated to his industrial accident and before the Commissioner had ordered a permanent partial disability award.

The applicable statute for a dependent's right to permanent partial disability benefits is W. Va. Code, 23-4-6(g), which provides:

> "Should a claimant to whom has been made a permanent partial award of from one percent to eighty-four percent, both inclusive, die from sickness or noncompensable injury, the unpaid balance of such award shall be paid to claimant's dependents as defined in this chapter, if any; such payment to be made in the same installments that would have been paid to claimant if living: Provided, that no payment shall be made to any widow of such claimant after her remarriage, and that this liability shall not accrue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate."

This statute predicates the right of the claimant's dependents to obtain the benefits of the claimant on his

initially having been given an award of permanent partial disability. The phrase "unpaid balance of such award" also clearly indicates this construction.

In *Ferguson v. State Workmen's Compensation Commissioner*, 152 W. Va. 366, 163 S.E.2d 465 (1968), we discussed the precursor of W. Va. Code, 23-4-6(g) [then W. Va. Code, 23-4-6(e) (1937)], and held in Syllabus Point 2:

> "To entitle the dependent widow of a claimant, who dies from sickness or a noncompensable injury, to payment of the `unpaid balance of a permanent partial disability award of compensation under Section 6(e), Article 4, Chapter 23, Code, 1931, as amended, a valid award of such compensation must be made by the workmen's compensation commissioner during the lifetime of the claimant; and if such claimant dies before such award is made his dependent widow is not entitled to receive any part of an award which could have been made during the lifetime of the claimant."

*Ferguson* requires that the Commissioner shall have made an award of permanent partial disability before the claimant's dependents are entitled to receive the benefits at his death under W. Va. Code, 23-4-6(g). It is true that the Legislature altered the result of *Ferguson* by providing that "a finding of the occupational pneumoconiosis board shall have the force and effect of an award." W. Va. Code, 23-4-6(h). This legislative alteration of *Ferguson* only in the occupational pneumoconiosis area indicates that the Legislature did not intend to change the *Ferguson* holding in other areas.

Since the claim here involved fractures of the fingers and there was no loss of a bodily member, W. Va. Code, 23-4-6(f), does not come into play. This section provides that if a claimant receives a compensable injury involving the total severance of a bodily member and dies

before the award is made, his dependents may obtain the benefits.[2]

The apparent rationale for this provision is that a severance of a bodily member is subject to a specific scheduled award under W. Va. Code, 23-4-6(f). The Commissioner can thus easily determine the award amount without the benefit of medical advice. Consequently, there is no medical evaluation and claimant's death does not affect the award process. His dependents, therefore, are entitled to the disability benefits.

We conclude that under *Ferguson* the claimant's widow is not entitled to permanent partial disability benefits, since the claimant received no unscheduled permanent partial disability award during his lifetime and died of causes unrelated to the injury.

## II

The claimant's widow further contends that the Commissioner was in error in applying the provisions of W. Va. Code, 23-4-1c, when he entered his order on October 20, 1977, retroactively terminating the temporary total disability benefits as of April 1, 1976.[3] The question

---

[2]The last paragraph of W. Va. Code, 23-4-6(f), provides:

"Should a claimant sustain a compensable injury which results in the total loss by severance of any of the bodily members named in this subdivision, die from sickness or noncompensable injury before the commissioner makes the proper award for such injury, the commissioner shall make such award to claimant's dependents as defined in this chapter, if any; such payment to be made in the same installments that would have been paid to the claimant if living: Provided, that no payment shall be made to any widow of such claimant after her remarriage, and that this liability shall not accrue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate."

[3]W. Va. Code, 23-4-1c, provides in pertinent part:

"In the event that an employer files a timely objection to any finding or order of the commissioner, as provided in section one ... article five of this chapter, with respect to the payment or continued payment of temporary total disability benefits and those expenses as outlined in subdivision (a), section three ... of this arti-

of the termination of temporary total disability benefits was discussed at length in our recent decision in *Mitchell v. State Workmen's Compensation Commissioner*, W. Va.    , S.E.2d (May 22, 1979) (No. 14400). There, we held in Syllabus Point 4 that W. Va. Code, 23-4-1c, requiring reimbursement of temporary total disability benefits by the claimant, has no applicability unless the initial award was jurisdictionally improper:

> "The overpayment provisions of W. Va. Code, 23-4-1c, apply only where the Commissioner determines in a W. Va. Code, 23-5-1, proceeding, that the claimant was not lawfully entitled to the temporary total disability benefits originally by virtue of the fact that the claim did not jurisdictionally qualify."

In *Mitchell*, we delineated the two different procedures available under W. Va. Code, 23-5-1, and W. Va. Code, 23-5-1c, to challenge temporary total disability awards. We demonstrated that W. Va. Code, 23-5-1, provides a method of challenging the original jurisdictional eligibility for the award, which challenge, if successful, would trigger reimbursement by the claimant under W. Va. Code, 23-4-1c, since the initial temporary total disability award would have been found unlawful. We also held that even though an employer does not protest the jurisdictional

---

cle, as provided herein, the commissioner shall continue to pay to the claimant such benefits and expenses during the period of such disability unless it is subsequently found by the commissioner that the claimant was not entitled to receive the temporary total disability benefits and the expenses provided for in subdivision (a), section three of this article, or any part thereof, so paid, in which event the commissioner shall, where the employer is a subscriber to the fund, credit said employer's account with the amount of the overpayment; . . . If the final decision in any case determines that a claimant was not lawfully entitled to benefits paid to him pursuant to a prior decision, such amount of benefits so paid shall be deemed overpaid. The commissioner may recover such amount by civil action or in any manner provided in this Code for the collection of past-due payment and shall withhold, in whole or in part, as determined by the commissioner, any future benefits payable to the individual and credit such amount against the overpayment until it is repaid in full."

correctness of the initial temporary total disability award within the thirty-day period under W. Va. Code, 23-5-1, he may still seek termination of temporary total disability benefits under W. Va. Code, 23-5-1c, on a showing that claimant has reached maximum degree of improvement. This protest can be made at any time during the continuation of temporary total disability benefits, since W. Va. Code, 23-5-1c, contains no time period for filing the protest application.

*Mitchell* also emphasized that when an employer protests the continuation of temporary total disability benefits on the basis that the claimant has reached maximum degree of improvement or has been medically certified to return to work, the Commissioner should determine this issue administratively without the necessity of prior evidentiary hearings. This point was stated in the Third Syllabus:

> "W. Va. Code, 23-5-1c, permits an employer, upon an application containing credible evidence, to request the Commissioner to terminate temporary total disability benefits. Under this section, evidentiary hearings are not required to be held by the Commissioner until an order terminating the benefits is entered and timely objection to the order has been made. However, procedural due process standards mandate that the Commissioner give the claimant advance notification of the reasons why his temporary total disability benefits are being considered for termination and a reasonable opportunity to supply relevant information on the issue, except where the claimant has voluntarily returned to work."

In the Fifth Syllabus of *Mitchell,* we concluded that when the Commissioner determines that an award of temporary total disability benefits should be terminated because the claimant has reached maximum degree of improvement or has been medically certified to return to work, the date of the termination of the benefits is the date of the Commissioner's termination order:

"In a proceeding under W. Va. Code, 23-5-1c, to terminate temporary total disability benefits, the proper date for termination of the benefits is the date of the Commissioner's termination order."

Applying these principles to the present case, we find that the employer's protest to continuation of temporary total disability benefits was based on credible medical evidence which indicated claimant had reached maximum degree of improvement. The protest went not to the initial lawfulness of the award from a jurisdictional standpoint, and thus the Commissioner should have treated it under W. Va. Code, 23-5-1c. The Commissioner should not have treated the employer's protest as a W. Va. Code, 23-5-1, proceeding, since the protest was filed more than thirty days from the date of the temporary total disability award. Since it was not a W. Va. Code, 23-5-1, proceeding, no prior evidentiary hearing was required and the Commissioner's order terminating the temporary total disability benefits ordinarily should have terminated the benefit as of the date it was entered.[4]

The present case, however, does present an issue not directly discussed in *Mitchell*, which is the proper date of termination of temporary total disability benefits when the claimant dies while receiving the benefits. In *Mitchell*, we did discuss a somewhat analogous situation where the claimant voluntarily returns to work, and concluded:

"As we stated in note 1, *supra*, the claimant who has actually returned to work generally has, by such action, voluntarily terminated his right to further temporary total disability benefits.

---

[4]We emphasized in Syllabus Point 3 of *Mitchell* that while the Commissioner is empowered to terminate temporary total disability benefits in a W. Va. Code, 23-5-1c, proceeding without the necessity of a prior evidentiary hearing, "procedural due process standards mandate that the Commissioner give the claimant advance notification of the reasons why his temporary total disability benefits are being considered for termination. . . ."

Consequently, the Commissioner is not required to send a prior notice of the termination, since the claimant's voluntary act has terminated the entitlement to the benefit." [     W. Va. at     , S.E.2d at     (No. 14400, pp. 14–15)]

Much the same reasoning would appear to be applicable where the claimant dies while receiving temporary total disability benefits. There is no provision in the Workmen's Compensation Act which permits the claimant's dependents to succeed to his right to a temporary total disability award. Indeed, as we noted in *Mitchell*, the reason for these benefits is to assist the claimant "through the recovery process,"     W. Va. at     , S.E.2d at     (No. 14400, p. 5), and this reason ceases upon the claimant's death.

We conclude that where a claimant who is receiving temporary total disability benefits dies, such benefits should be terminated as of the date of his death. The Commissioner, therefore, should have terminated the temporary total disability benefits as of May 11, 1977, the date of claimant's death.

We, therefore, affirm that portion of the Appeal Board order which held that the widow of the claimant is not entitled to any permanent partial disability benefits, and reverse that portion of the order which terminated temporary total disability benefits as of April 1, 1976.

*Affirmed in part and reversed in part.*