W.L. HARPER CONSTRUCTION COMPANY, INC., Appellant,

v.

Ronald BAKER; Suzanne Shively, Administrative Law Judge; Robert Whitaker, Director of Special Fund; and Workers' Compensation Board, Appellees.

No. 92–CA–001024–WC.

Court of Appeals of Kentucky.

July 9, 1993.

Barbara Booker Wills, Vimont & Wills, Lexington, for appellant.

Melbourne Mills Jr., John W. Hardin, Versailles, for appellee, Ronald Baker.

David R. Allen, Louisville, for appellee, Special Fund.

Before HUDDLESTON, JOHNSON and STUMBO, JJ.

STUMBO, Judge:

This appeal arises from a workers' compensation claim filed by Appellee, Ronald Baker (hereinafter "Baker"). Baker's employer, Appellant, W.L. Harper Construction Company, Inc. (hereinafter "Employer"), raises only one issue on appeal as to whether the length of the award of temporary total disability (hereinafter "TTD") made by the administrative law judge (hereinafter "ALJ") was correct. We note that the Workers' Compensation Board (hereinafter "Board") affirmed the ALJ's award, since it found the issue to be one of fact, and substantial evidence supported the award. After considering the record and law, we also must affirm.

The single issue on appeal is whether TTD should have been paid for the period from July 1, 1989, through September 12, 1990. The basis for the Employer's argument is certain testimony from Baker's treating orthopedic surgeon, which arose during the employer's cross-examination of the doctor. The testimony is as follows:

Q. With respect to whether or not he was able to return to work, I believe it's been your earlier testimony that it wasn't until September of this—or of 1990 that you released him to return to work. If he had come to you in the summer of 1989 and indicated he had a job as a security guard or say working at a cash register, would you have found anything, based on your physical examinations of him, to have told him or advised him not to engage in that type of employment at that time?

A. I would have allowed him to return to a lighter type of employment at that time.

Q. And, in fact, I believe your notes indicate that you recommended, I believe in June of 1989, that he seek vocational rehabilitation for lighter duty work?

A. Yes, ma'am.

\* \* \* \* \* \*

Q. By indicating that he's unchanged over the past six months, are you also indicating that basically you found the same things on physical exam back in March of 1990 that you found in September of 1990?

A. Yes, ma'am.

Q. So essentially you would have released him to return to work at an earlier date? There's no indication to indicate that there was any change between the six-month period, that lighter duty work would have been a possibility for him?

A. If lighter duty work would have been possible, I would have released him, yes, ma'am.

Q. And that's actually true all the way back to June of 1989?

A. Yes, ma'am.

The record also contains testimony from an examining physician to whom Baker was sent by the Employer, that Baker had not reached maximum medical improvement as of the date of the examination, November 11, 1989. A second evaluating physician, who examined Baker on February 13, 1991, did not directly address the TTD issue.

The ALJ found that TTD ended on September 12, 1990, which was the date the treating doctor actually released Baker to return to work. She further found that Baker could not be required to have "sec-

ond sight" so as to be required to request a release from his doctor to return to work before the doctor made any mention of it.

The Board, after discussing the ambiguities that exist in defining TTD, affirmed the ALJ. It reasoned that the issue was one of fact regardless of the definition of TTD. Since there was substantial evidence of record, including the lack of an actual release until September 12, 1990; the absence of any showing that the treating physician believed that Baker had reached maximum medical improvement in June 1989; and the examining physician's statement that maximum medical improvement had not been reached in November 1989, the Board affirmed.

■■■■ The difficult question in this appeal is defining TTD. It is not defined in the statutes. Nor did many earlier cases provide any definitive answers. *See e.g., Island Creek Coal Company v. DeMoss,* Ky.App., 621 S.W.2d 509, 510 (1981); and *Allied Corporation v. Hornsby,* Ky.App., 661 S.W.2d 480, 482 (1983), both of which defined temporary disability in terms of a period for which benefits are paid, which is followed by a period during which the claimant returns to work. However, in *Robinson v. Newberg,* Ky., 849 S.W.2d 532, 534 (1993), the longstanding distinction between TTD and permanent disability was noted. The Supreme Court provided some explanation of TTD relying heavily on Larson. It stated:

'[T]here has evolved in America a four-way classification of disabilities, (1) temporary total, (2) temporary partial, (3) permanent partial, and (4) permanent total.' Larson, *The Law of Workmen's Compensation,* § 57.12(a). Professor Larson observes that in the usual situation, temporary total disability is payable during the period of healing and complete wage loss until a recovery or stabilization occurs. Larson, § 57.12(b). Temporary total disability benefits assist the claimant through the recovery process. *Hagy v. State Workmen's Compensation Commissioner,* 163 W.Va. 198, 255 S.E.2d 906 (1979). Obviously, death terminates any recovery process,

and the necessity for those benefits. 'Of course, if the claimant's continued unemployment is the result, not of his employment-related impairment, but of personal ailments unrelated to his employment, there is no possible ground for continuing temporary benefits.' Larson, § 57.-12(e).

Larson provides further helpful explanation regarding the issue of stabilization. Specifically, he notes that the question may be purely a medical issue in that the medical evidence indicates recuperation is not yet over, since further healing or strengthening may be anticipated, and it is too early to appraise the claimant's permanent disability. Larson, § 57.12(c). On the other hand, the medical testimony may establish that the claimant is as recovered as he will ever be, and any lingering disability is permanent. *Id.* Moreover, just because some treatment is still necessary, such as drug treatment or physical therapy, does not preclude a finding that the condition is stabilized if the underlying condition causing the disability has become stable and no additional treatment will improve the condition. *Id.* However, if treatment is rendered in the hope of improving the condition, the subsequent discovery that no improvement resulted does not bar a finding that the healing period continued throughout the treatment process. *Id.* It is further noted that the persistence of pain alone, even when the pain fluctuates, does not prevent a finding that the healing period is over, provided the underlying condition is stable, and additional treatment will not be helpful. *Id.* As the Board noted, since Kentucky does not recognize the concept of temporary partial disability, any discussion of TTD must be read in conjunction with the definition of total occupational disability set forth in *Osborne v. Johnson,* Ky., 432 S.W.2d 800, 803 (1968):

If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the board finds that regular employment in the kind of work the man can perform is not available on the local labor market, the man will be considered to be *totally* dis-

abled. Otherwise he will be considered to be only *partially* disabled.

To summarize, TTD is payable until the medical evidence establishes the recovery process, including any treatment reasonably rendered in an effort to improve the claimant's condition, is over, or the underlying condition has stabilized such that the claimant is capable of returning to his job, or some other employment, of which he is capable, which is available in the local labor market. Moreover, as the Board noted, the question presented is one of fact no matter how TTD is defined.

 Since Baker prevailed before the ALJ, the question on appeal is whether the ALJ's determination is supported by substantial evidence. *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735, 736 (1984). The ALJ, as the fact finder, is entitled to believe part of evidence, and disbelieve other parts, even where the evidence came from a single witness. *Caudill v. Maloney's Discount Stores*, Ky., 560 S.W.2d 15, 16 (1977).

We think the Board analyzed the issue cogently. It said:

As the ALJ noted, Baker was never informed that he had reached maximum medical improvement and should therefore seek light work until his September 1990 appointment with Dr. Leslie. While Dr. Leslie did recommend vocational rehabilitation as early as June 1989, there is nothing to show that he believed Baker would not make further improvements. This view was also shared by Dr. Allen, who examined Baker a few months later and concluded that he had yet to reach maximum medical improvement. Thus, the ALJ's logic in awarding TTD benefits until September 12, 1990 is supported by evidence of record, and the Board is therefore precluded from substituting its judgment for that of the ALJ. *Millers Lane Concrete Company, Inc. v. Dennis*, Ky.App., 599 S.W.2d 464 (1980).

We, too, as the second tier of appellate review, are precluded from substituting our judgment in place of the ALJ's. *See Western Baptist Hospital v. Kelley*, Ky., 827 S.W.2d 685, 687 (1992).

As a final note, we find nothing improper in the ALJ's reference to "second sight." The point clearly made, and quite correct, is that when a claimant receives continued treatment in the hope of improvement, he will not be penalized if the treatment yields no significant improvement. Nor do we fault Baker for not specifically asking his treating physician on each visit if he could seek some other light employment. In other words, there is substantial evidence to support the ALJ's award of TTD.

For the reasons set forth above, we affirm the opinion of the board, which upheld the ALJ's award.

All concur.