# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

*THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.*

RENDERED: JUNE 15, 2006
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-0734-WC

JOSEPH K. HUTCHINS      APPELLANT

V.
APPEAL FROM COURT OF APPEALS
2005-CA-0127-WC
WORKERS' COMPENSATION NO. 03-98565

SUMMA TECHNOLOGY/KEN-MAR;
HON. BONNIE KITTINGER, ALJ; HON.
JOHN W. THACKER, ALJ; and WORKERS'
COMPENSATION BOARD      APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

After proof time closed, the hearing was held, and the briefs submitted, an Administrative Law Judge (ALJ) awarded the claimant "interlocutory" temporary total disability (TTD) and benefits for weight loss treatment and placed the remaining issues in abeyance. The Court of Appeals affirmed the Workers' Compensation Board's (Board's) decision to vacate the award and remand the claim for a decision on the abated issues. It reasoned that the ALJ lacked authority to enter such an award when neither party disputed that the claimant had reached maximum medical improvement (MMI) or asserted that he was entitled to the treatment. Appealing, the claimant asserts that the award was within the ALJ's authority and that substantial evidence supported it. We affirm.

The claimant was born in 1957. He completed the eleventh grade, received high school vocational training in automotive mechanics, and obtained a GED. He stated that he had worked in a sawmill and also worked as a mechanic, as the operator of a metal cutting machine, and as a driller and dynamite loader in construction. He testified that he had missed about a month of work after a 1993 back injury and experienced pain similar to that he presently experienced. He had also missed several weeks after a March, 2002, back injury for which no claim was filed. The injury presently at issue occurred on December 2, 2002, when he jerked on a vice and pulled his lower back muscles. He reported the incident, saw a physician, and was taken off work for several days. On March 11, 2003, he saw Dr. Nazar for a second opinion and was taken off work completely. He has not worked since then.

The claimant testified that he continued to experience pain in his lower back and numbness in his legs that sometimes caused him to fall while walking. He used a cane and sometimes crutches. He testified that he had gained 50-75 pounds since the injury and presently weighed about 425 pounds. He was unable to exercise and was attempting to eat less in order to lose weight. He stated that although he worked full time, cared for his horses, and engaged in other activities before the injury, he could no longer tie his shoes. He spent his time sitting or lying on the couch and went outdoors only when someone was present to help him get up if he fell.

On March 11, 2003, Dr. Nazar examined the claimant for the employer. He received a history of the work-related injury and the complaints of back pain that radiated into the hips. He noted muscle spasms in the lower back but found no acute signs or symptoms of radiculopathy. Lumbar spine x-rays showed localized degenerative changes throughout the lumbar spine. Dr. Nazar urged a weight loss

-2-

program, perhaps with surgical intervention. He characterized the injury as being a lumbar sprain or strain, prescribed medication and referred the claimant to Dr. Bilkey.

After the initial exam on April 15, 2003, Dr. Bilkey diagnosed lumbar strain and myofascial pain. He found no clear signs of a disc herniation with radiculopathy. Dr. Bilkey kept the claimant off work and prescribed both medication and a home exercise program. He later referred the claimant to Dr. Berg for epidural steroid injections.

A July 2, 2003, report from Dr. Berg included a history of prior back injuries in a 1982 motor vehicle accident and a 1993 work-related accident. X-rays revealed multi-level lumbar spondylosis. Dr. Berg diagnosed lower back and intermittent leg pain secondary to lumbar spondylosis and possible spinal stenosis. In his opinion, the best solution for the claimant would be a significant weight loss, after which he would consider a trial of epidural injections.

On July 8, 2003, Dr. Bilkey recommended an EMG to evaluate radiculopathy because he was concerned that an MRI or CT scan would be inaccurate due to the claimant's weight. He noted that Dr. Berg had refused epidural injections at that time due to the claimant's diabetic condition. On September 9, 2003, Dr. Bilkey noted that the workers' compensation carrier refused to authorize the EMG and reiterated that diagnostic imaging would not reach the relevant muscles but that EMG would. He stated that the claimant would be at MMI for the purposes of his workers' compensation claim because treatment had been discontinued; therefore, he assigned a 13% impairment under DRE lumbar category II, using the Fifth Edition of the AMA guidelines. He attributed it to the work-related injury. He also stated that the claimant was not at MMI from a medical standpoint and should have the recommended EMG.

On July 29, 2003, Dr. Best conducted a functional capacity evaluation at the

employer's request. He obtained a history of the claimant's injuries and reviewed his medical records. He reported that the claimant's effort was sub maximal and that there were strong indications of symptom magnification. Moreover, there were no objective findings to support the complaints of pain. He diagnosed a lumbosacral strain with no radicular component or sciatica. In his opinion, the injury caused no impairment, and the claimant could return to work. Any continued symptoms would more likely be due to the claimant's morbid obesity than his injury.

Dr. Loeb, an orthopedic surgeon, evaluated the claimant on January 28, 2004. He took a history, examined the claimant, and reviewed numerous medical records, after which he diagnosed degenerative disc disease throughout the lumbosacral spine with several previous sprains, massive obesity, and diabetes mellitus. Dr. Loeb noted a history of low back injuries since 1993, including recurrent injuries on March 19, 2002, and December 2, 2002. In his opinion, the claimant's present symptoms were directly related to his obesity and pre-existing degenerative changes. Physical therapy notes from April, 2002, indicated that the claimant's pain had not decreased from the March, 2002, injury. Moreover, x-rays taken in May, 2003, showed no changes from those taken in April, 2002, before the latest injury. In his opinion, the effects of the December, 2002, injury were only transient and caused no permanent impairment.

When deposed, Dr. Loeb reiterated that the claimant had an active ongoing degenerative condition in his back before the December, 2002, incident. The work-related injury did not aggravate the condition and caused no permanent impairment. In his opinion, the pre-existing, active arthritic degenerative condition was aggravated by the claimant's obesity and diabetic condition. Moreover, absent objective findings of radiculopathy, a degenerative condition and radicular complaints warranted only an 8%

-4-

impairment (DRE category II). He thought the claimant could not work full time in his present condition, that his back condition would be treatable if he lost about 250 pounds, and that a weight of about 200 pounds would be "very acceptable in his situation." At that point, physical therapy, medication, and a brace would help.

At the Benefit Review Conference (BRC), the parties stipulated that the employer paid approximately $3,500.00 in medical expenses. It also paid TTD benefits voluntarily from December 6 through December 19, 2002, and from March 12 through August 27, 2003, after which the claimant did not return to work. The contested issues listed on the BRC Memorandum included: the existence of an injury as defined by KRS 342.0011(1), causation, liability for TTD and medical benefits, the extent and duration of disability, an offset for unemployment or employer-funded disability benefits, a credit for the overpayment of TTD, and the entitlement to vocational rehabilitation. At the hearing, the ALJ ordered simultaneous briefs and also ordered the claim to stand submitted as of April 21, 2004.

In his brief, the claimant asserted that his pre-existing injuries and obesity were not disabling before the injury. He maintained that he was permanently and totally occupationally disabled due to the injury, that he was entitled to such an award, and that the employer should receive credit against the award for the TTD benefits that it paid voluntarily. He also requested future medical benefits, including benefits for weight reduction.

The employer pointed to the prior injuries and degenerative condition as well as the pre-existing diabetic condition and obesity. It maintained that any new "injury" was only a temporary aggravation of his longstanding back condition that had since resolved with no permanent impairment or disability. It also asserted that it had overpaid TTD

-5-

benefits, that the claimant was not entitled to future medical benefits, that it was entitled to credit for any unemployment or employer-funded disability benefits, and that the evidence did not warrant vocational rehabilitation.

On June 8, 2004, the ALJ rendered a decision styled "Interlocutory Opinion, Award and Order." Relying on the claimant's unrebutted testimony, the ALJ determined that he was released to full duty after the March, 2002, injury; that he was not working under restrictions in December, 2002; and that he had been assigned no impairment for a back condition at that point. Convinced that the claimant sustained an injury as defined by KRS 342.0011(1), the ALJ determined that his current impairment and disability resulted from the injury rather than degenerative arthritis or obesity. Relying on Dr. Bilkey and also noting that Dr. Loeb thought the claimant's condition was treatable if he lost weight, the ALJ determined that the claimant had not reached MMI from a medical standpoint. Finding that treatment reasonably rendered to improve the claimant's condition was not complete, that he was not at MMI, and that he was unable to return to work, the ALJ awarded TTD benefits indefinitely, until such time as he reached that status. KRS 342.0011(11)(a); Central Kentucky Steel v. Wise, 19 S.W.3d 657 (Ky. 2000); W. L. Harper Construction Co., Inc. v. Baker, 858 S.W.2d 202 (Ky. App. 1993). Moreover, the ALJ ordered the employer to pay for the EMG studies that Dr. Bilkey recommended as well as for unspecified weight reduction treatment so that medical treatment of the back condition could proceed.

After the employer's petition for reconsideration was denied, it appealed the TTD and weight-reduction portions of the award but stated that it would continue to pay reasonable and necessary medical expenses, including the EMG. It pointed out that neither party had asserted the claimant was not at MMI and that the claimant did not

request interlocutory benefits, assert he was entitled to open-ended TTD benefits, or attempt to make the required showing. Nor did he request approval for weight-reduction treatment. Although the parties presented their evidence and submitted the claim for a final decision, the ALJ awarded open-ended TTD benefits <u>sua sponte</u>, ordered the employer to pay for weight-reduction treatment, and placed the claim in abeyance without deciding the remaining issues.

The claimant moved to dismiss the appeal on the ground that it was taken from an interlocutory decision, but the motion was passed to a consideration of the merits. His brief asserted that the award was "truly 'interlocutory' in nature" and that the appeal was "inappropriate." He also maintained, however, that the award was authorized and supported by substantial evidence of temporary total disability as defined by KRS 342.0011(11)(a). Moreover, he conceded that he did not request medical benefits for weight loss before the hearing and only considered the pre-existing obesity to be a factor causing the injury to be more severe than it would have been otherwise. He also conceded that no physician recommended a specific weight loss treatment and that "it might be appropriate for the award to be limited . . . to reducing his weight back to his pre-injury level." The Board and the Court of Appeals determined that the ALJ's decision could properly be appealed, that the award must be vacated, and that the claim must be remanded to consider the abated issues.

The claimant has abandoned his assertion that the ALJ's decision was not appealable; therefore we will not address the matter. <u>See</u>, <u>Chittum v. Abell</u>, 485 S.W.2d 231, 237 (Ky. 1972). He now argues that the ALJ's error, if any, was to designate the decision as being interlocutory because "the award was not really interlocutory in nature." It was rendered after all proof was taken, after the hearing was

-7-

held, and after the parties presented their arguments. He argues that 803 KAR 35:010, §12 is inapplicable after all proof has been submitted to an ALJ and that KRS 342.275(2) authorizes an ALJ to award any benefits under Chapter 342. Therefore, it permits an ALJ to award additional medical benefits, to award TTD benefits for an indefinite period, and to retain jurisdiction over the claim until the injured worker reaches MMI. On that basis, he maintains that the "real issue" is whether substantial evidence supported the award.

KRS 342.275(2) permits an ALJ to award interlocutory benefits "according to criteria established in administrative regulations." 803 KAR 25:010, §12 authorizes the interim payment of total disability and medical benefits. It permits a party to request interlocutory relief by filing a motion and permits an opposing party to file a response. It also requires an informal conference to discuss the entitlement to interlocutory relief at a party's request. 803 KAR 25:010, § 12(4)(a)2 provides that a worker requesting interlocutory relief must show that he "[w]ill suffer irreparable injury, loss or damage pending a final decision on the [claim]." Like other interlocutory orders, an order granting an injured worker's request for interlocutory benefits may not be appealed until after a decision on the merits of the underlying claim. See, KI USA Corp. v. Hall, 3 S.W.3d 355 (Ky. 1999); Ramada Inn v. Thomas, 892 S.W.2d 593 (Ky. 1995); Transit Authority of River City v. Saling, 774 S.W.2d 468 (Ky. App. 1989).

KRS 342.275(1) requires the Office of Workers' Claims to schedule a BRC in disputed claims. It is scheduled for a date after proof time has closed, and 803 KAR 25:010, § 13 explains that its purpose is to expedite the processing of a claim. Consistent with that goal, 803 KAR 25:010, § 13 (11) and (13) require the parties to narrow and define the matters at issue and to stipulate the contested and uncontested

-8-

issues. 803 KAR 25:010, § 13 (14) provides that "[o]nly contested issues shall be the subject of further proceedings."

The claimant did not request interlocutory TTD, weight loss treatment, or any other interlocutory relief, and he made no showing of irreparable injury, loss, or damage if he failed to receive such relief pending a final decision on his claim. As he points out, the award at issue was not rendered pursuant to a motion for interlocutory relief. It was rendered after the claim was submitted for a decision on the merits of the contested issues. The BRC memorandum in this case did not list MMI or the claimant's entitlement to additional TTD benefits as being in dispute. Nor did it list a dispute over the compensability of weight-reduction treatment because neither party asserted at the time that it was reasonable and necessary treatment for the effects of the injury. Therefore, regardless of whether an ALJ may award open-ended TTD where warranted by the evidence, this is not a case that issue was disputed, listed in the BRC, and preserved for the ALJ's consideration. Nor was the entitlement to weight loss treatment. Under the circumstances, the ALJ violated 803 KAR 25:010, § 13 by proceeding to decide matters that were not at issue and by failing to decide all of the disputed issues. Therefore, the Board did not err by vacating the award and remanding the claim for a decision on the merits of the abated issues.

The decision of the Court of Appeals is affirmed.

All concur.

COUNSEL FOR APPELLLANT:

Ben T. Haydon, Jr.
118 East Broadway
P.O. Box 1155
Bardstown, KY 40004


COUNSEL FOR APPELLEE,
SUMMA TECHNOLOGY/KEN-MAR:

Judson F. Devlin
Fulton & Devlin
Browenton Place, Suite 165
2000 Warrington Way
Louisville, KY 40222