# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 21, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2007-SC-000132-WC

UNITED PARCEL SERVICE          APPELLANT

V.                 ON APPEAL FROM COURT OF APPEALS
                            2006-CA-001664-WC
              WORKERS' COMPENSATION NO. 04-81478


STEPHEN J. HICKMAN,
HON. JOHN W. THACKER,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD          APPELLEES


### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

KRS 342.020(1) entitles a worker to be compensated for medical treatment that may reasonably be required at the time of a work-related injury and thereafter during disability, regardless of the duration of income benefits.

Having determined that the claimant strained his shoulder, causing a temporary exacerbation of a pre-existing shoulder condition, an Administrative Law Judge (ALJ) terminated temporary total disability (TTD) and medical benefits upon the claimant's return to work. Although the Workers' Compensation Board (Board) determined that no medical evidence supported the date for terminating medical benefits, a majority found the error to be harmless and affirmed. The Court of Appeals reversed. We affirm and remand for the ALJ to determine from the medical evidence the duration of the disability

that the injury caused under the standard found in <u>FEI Installation, Inc. v. Williams</u>, 214 S.W.3d 313 (Ky. 2007), and to award reasonable and necessary medical expenses until that point.

The claimant was born in 1976, completed three years of college, and had worked for the defendant-employer since 1999. He had a history of medical treatment for left shoulder complaints that dated, at least, to December 2002. His claim alleged that he injured his left shoulder on July 20, 2004, while stacking totes in the course of his work. He finished his shift, sought medical treatment the next day, and worked at light duty through August 16, 2004, when his treating orthopedic specialist took him off work altogether. Although his physician did not release him to return to work until October 25, 2004, he did so on October 18, 2004, and filed an application for benefits on November 4, 2004. When deposed in January 2005, he testified that he was under no work restrictions. Asked how his present duties differed from those in July 2004, he stated that he no longer stacked totes but monitored that operation. His other duties were the same. He stated that he continued to receive medical treatment and that some medical bills remained unpaid at that point.

Dr. Kirstin Ferguson had been the claimant's treating chiropractor since late in 2002. When completing a patient intake form, the claimant stated that he was involved in five motor vehicle accidents from 1994 through 2002 and presently experienced back and shoulder pain. On July 10 2003, after another motor vehicle accident, his major complaints involved neck and left shoulder pain, and he still had 20% of his original symptoms. Dr. Ferguson continued to treat him for those complaints throughout 2003, after which she did not see him again until July 2004. On July 1 and 7, 2004, she

performed left shoulder adjustments.

On July 7, 2004, the claimant also saw Dr. Dunaway, his family physician. He complained of pain with range of motion of his left shoulder, which Dr. Dunaway attributed to tendonitis or bursitis.

On July 8, 2004, the claimant returned to Dr. Ferguson with complaints of low back and bilateral shoulder pain. On July 21, 2004, he reported that he had injured his left shoulder while lifting. Dr. Ferguson performed a shoulder adjustment, instructed the claimant to ice the shoulder after each session, and to perform pendulum exercises. In March 2005 she ordered a nerve conduction study and somatosensory testing, neither of which revealed a left shoulder abnormality. She continued to treat his left shoulder as well as his cervical and lumbar spine through August 25, 2005.

Dr. Rennirt, an orthopedic specialist, first saw the claimant on August 16, 2004, about a month after the incident at work. The record does not indicate whether he received a history that included the left shoulder complaints that preceded the incident. Dr. Rennirt suspected a shoulder strain but was puzzled over the severity of the pain that the claimant reported. He took the claimant off work and referred him for physical therapy. Although the claimant reported a 30-40% reduction in his pain by September 20, 2004, Dr. Rennirt remained concerned that the reduction was not greater. On October 11, 2004, he advised the claimant to remain off work for another two weeks and released him to return to regular duty as of October 25, 2004. At a follow-up in mid-November 2004, Dr. Rennirt imposed a 30-pound lifting restriction based on complaints of excruciating pain at the end of the workday. When the complaints continued in December 2004, Dr. Rennirt ordered an MRI, which showed some mild

3

tendonitis but no tear in the labrum. Although he injected the subacromial space, the complaints continued in January 2005. After a left shoulder arthrogram revealed no abnormality, Dr. Rennirt referred the claimant for pain management. Nothing indicated that he treated the claimant after March 9, 2005.

Dr. Moskal reviewed the claimant's medical records and evaluated him for the employer on September 22, 2004. Finding no tenderness on palpation, a full range of motion without crepitus, and no evidence of atrophy, swelling, motor changes, or muscle spasm, Dr. Moskal diagnosed idiopathic shoulder pain with no evidence of mechanical compromise. He stated that the pain was unrelated to the claimant's work and also that the claimant had a co-morbid condition and active impairment for which a chiropractor treated him weekly. In his opinion, the claimant was at maximum medical improvement (MMI). There was no evidence of permanency, and the claimant required no additional treatment or work restrictions. Dr. Moskal assigned a 0% permanent impairment rating, noting that the claimant had a symmetrical range of motion, intact strength, intact stability, and no evidence of crepitus or joint malalignment.

As listed on the December 21, 2005, benefit review conference memorandum, the parties stipulated that the employer paid temporary total disability (TTD) benefits from August 16, 2004, through October 3, 2004, and paid about $7,400 in medical expenses. The memorandum listed no unpaid or contested medical bills, but among the contested issues were whether the claimant sustained an injury as defined by the Act, "extent and duration," and the claimant's entitlement to future medical benefits. The parties submitted the matter without briefing or a hearing.

The ALJ determined that the claimant sustained a work-related injury based on

4

Dr. Rennirt's testimony. Based on Dr. Moskal's testimony, the diagnostic testing, and Dr. Ferguson's notes, the ALJ found that the injury consisted of the temporary exacerbation of a pre-existing left shoulder condition and extended from July 20, 2004, until the claimant's return to work on October 18, 2004. The ALJ awarded TTD benefits from August 16, 2004, when Dr. Rennirt took the claimant off work, through October 17, 2004, after which he returned to work, and awarded medical benefits from the date of injury through October 17, 2004. The opinion contained no specific finding regarding the date that the claimant reached MMI and failed to cite any medical evidence supporting the decision to terminate medical benefits on October 17, 2004. The claimant's petition for reconsideration asserted that the ALJ committed a patent error by equating his right to medical treatment to his period of TTD. He pointed out that he continued to be treated and to undergo diagnostic testing after his return to work. The ALJ denied the petition, after which the claimant appealed.

The claimant requested the Board to remand the claim for the ALJ to make additional findings regarding the date of MMI and award medical benefits to that date or to determine the compensability of the ongoing chiropractic treatments and the arthrogram that Dr. Rennirt ordered in February 2005. He acknowledged that when work exacerbates a pre-existing condition, the ALJ must decide whether a particular medical treatment relates to the work-related injury or to the pre-existing condition. But relying on Cavin v. Lake Construction Co., 451 S.W.2d 159 (Ky. 1970), he asserted that the need to treat the effects of such an injury does not necessarily end when TTD ends. Noting that diagnostic studies and treatment often continue after an injured worker's return to work and that KRS 342.020(1) does not limit medical benefits to the period of

5

TTD, he requested the Board to remand the claim for additional findings of fact and an appropriate award of medical benefits.

Citing to Central Kentucky Steel v. Wise, 19 S.W.3d 657 (Ky. 2000), the Board's majority acknowledged that an injured worker who returns to work before reaching MMI remains eligible for medical benefits but not for TTD benefits. Although the majority thought it unlikely that the claimant's voluntary return to work corresponded to the date that his temporary injury resolved, it found the ALJ's failure to determine the date of MMI or the date that he returned to his pre-injury physical status to be harmless because no medical expense remained unpaid between the date that Dr. Moskal found him to be at MMI and the date that Dr. Rennirt released him to return to work.

A dissenting opinion pointed out that although TTD ended with the claimant's return to work, no medical evidence supported terminating medical benefits on October 17, 2004. Convinced that the claim must be remanded as requested, the dissent noted that the ALJ's decision would enable the employer to seek reimbursement for medical bills paid for services performed after October 17, 2004, although Dr. Rennirt thought it necessary to continue to treat the claimant until March 9, 2005. The Court of Appeals agreed with the reasoning expressed in the dissent. Thus, it vacated the award of medical benefits and remanded the claim to the ALJ with directions to consider the medical evidence, determine when the claimant reached a pre-injury state of health, and award medical benefits accordingly.

The employer asserts that the ALJ did not commit a legal error and that that the Court of Appeals substituted its judgment for the ALJ's because no evidence compelled an award of medical benefits after October 17, 2004. Relying on Dr. Moskal, the

6

employer asserts that the award of medical benefits could not extend beyond October 17, 2004, because the claimant failed to show that any subsequent medical treatment or diagnostic testing was causally related to the injury rather than the pre-existing active condition. In the alternative, the employer asserts that the ALJ should determine the date when the claimant reached MMI from his temporary injury and terminate medical benefits on that date rather than on the date that he reached a pre-injury state of health. It characterizes the latter standard as being "nebulous and problematic" and notes that a difference exists "between a claim involving a temporary injury and one involving a permanent injury but no occupational disability."

KRS 342.0011(1) defines an injury as being work-related trauma that is the proximate cause producing a harmful change in the human organism. Thus, the court determined in Robertson v. United Parcel Service, 64 S.W.3d 284 (Ky. 2001), that when work-related trauma exacerbates a pre-existing condition, causing it to be symptomatic, a harmful change in the human organism (i.e., an injury) has occurred. The court noted that although an ALJ may not award permanent income benefits for a harmful change that fails to warrant a permanent impairment rating, an ALJ may award what TTD and medical benefits the evidence permits. Robinson's work caused a temporary flare-up of symptoms from a pre-existing, non-work-related condition. The ALJ held the employer liable for treating the symptoms but refused to award future medical benefits. Affirming, the court noted that Robinson suffered no permanent harm from the injury and was asymptomatic long before his claim was heard.

As construed in Central Kentucky Steel v. Wise, supra, and Magellan Behavioral Health v. Helms, 140 S.W.3d 579, 581 (Ky. App. 2004), KRS 342.0011(11)(a) imposes

7

two conditions for TTD benefits. The worker must not have reached MMI and must not have improved sufficiently to return to his customary work. W. L. Harper Construction Co., Inc. v. Baker, 858 S.W.2d 202 (Ky. App. 1993), explains that MMI occurs when an injured worker's condition has stabilized to the point that no additional treatment will improve the condition and any disability that remains is considered to be permanent. Medical treatment may continue to be compensable under KRS 342.020(1) although the worker has reached MMI or returned to customary employment or both.

FEI Installation, Inc. v. Williams, supra, concerns a worker's eligibility for future medical benefits for an injury that results in permanent harm but no permanent impairment rating. Nonetheless, the court's construction of KRS 342.020(1) pertains to both pre-award and future medical benefits and to both temporary and permanent injuries. The court noted the relationship between disability and impairment found in the post-1996 Act. It also noted that the Fifth Edition of the AMA's Guides to the Evaluation of Permanent Impairment, page 2, defines impairment as being "a loss, loss of use, or derangement of any body part, organ system, or organ function" and that impairment demonstrates the existence of a harmful change in the human organism. The court observed that impairment may or may not be permanent and may or may not rise to the level that warrants a permanent impairment rating. Mindful that KRS 342.020(1) states explicitly that liability for medical benefits exists for so long as an injury is disabling "regardless of the duration of the employee's income benefits," the court determined that disability exists for the purpose of the statute for so long as an injury causes impairment. It follows that disability exists at least until a worker reaches MMI but does not necessarily end at MMI.

8

Disability is measured for the purposes of KRS 342.020(1) by a standard different from those found in KRS 342.0011(11)(a)-(c). Questions under KRS 342.020(1) concerning the reasonableness and necessity of medical treatment or the extent and duration of disability are medical in nature. They require findings that are based on medical evidence.

In the present case, the parties contested whether the claimant sustained an injury, "extent and duration," and the claimant's entitlement to future medical benefits. Having found that the claimant sustained an injury, the ALJ was required to determine the extent and duration of his disability, not only for the purpose of awarding income benefits but also for the purpose of awarding medical benefits. The ALJ determined that the claimant's shoulder strain caused only a temporary exacerbation of a pre-existing condition. But the ALJ misapplied KRS 342.020(1) when terminating medical benefits on October 17, 2004, because no medical evidence indicated that disability from the injury ended on October 17, 2004. Although the claimant's petition for reconsideration raised the legal error and asserted that he continued to require treatment for the shoulder strain after his return to work, the ALJ denied it. Under the circumstances, the Court of Appeals did not err in determining that the ALJ must reconsider the claim for medical benefits under a correct legal standard.

The claimant's return to work on October 18, 2004, supported the ALJ's conclusion that TTD ended at that point. The conclusion, which the employer failed to appeal, implied a rejection of Dr. Moskal's testimony that MMI occurred on or before September 22, 2004, and of his testimony that the injury warranted no medical treatment after September 22, 2004. The claim must be remanded for the ALJ to

9

determine from the remaining medical evidence the point at which disability from the injury ended for the purposes of KRS 342.020(1) and to award reasonable and necessary medical treatment to that point.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
UNITED PARCEL SERVICE:

KENNETH DIETZ
JONES, DIETZ & SCHRAND, PLLC
P.O. BOX 0095
FLORENCE, KY 41022-0095

CHRISTOPHER NEWELL
JONES, DIETZ & SWISHER, PLLC
10503 TIMBERWOOD CIRCLE
SUITE 213
LOUISVILLE, KY 40223

COUNSEL FOR APPELLEE,
STEPHEN J. HICKMAN:

CHARLES E. JENNINGS
JENNINGS LAW OFFICE
239 SOUTH FIFTH STREET
SUITE 412
LOUISVILLE, KY 40202