**HALLS HARDWOOD FLOOR COMPANY, Appellant,**

v.

**Charles STAPLETON; Honorable James L. Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 1999–CA–001333–WC.

Court of Appeals of Kentucky.

April 7, 2000.

---

**20.** *Id.* at 414.

Douglas A. U'Sellis, Louisville, for Appellant.

A. Page Beetem, Ft. Mitchell, for Appellee.

BEFORE: EMBERTON, MILLER and TACKETT, Judges.

## OPINION

TACKETT, Judge:

Halls Hardwood Floor Company (Halls) brings this petition for review from an opinion of the Workers' Compensation Board (the Board) affirming an opinion and award of an administrative law judge (ALJ) awarding Charles Stapleton (Stapleton) benefits based upon a 7% occupational disability. For the reasons set forth herein, we affirm.

Stapleton suffered a work-related knee injury while employed by Halls in August 1997, and did not return to work until January 1998. After he returned to work, Stapleton was still experiencing pain in his knee and was unable to perform all of his previous duties (*i.e.,* installing, sanding, coating and refinishing hardwood floors). In March 1998, Stapleton advised Halls' owner that he was unable to perform his duties without assistance and Stapleton left Halls' employ. Stapleton filed a claim for workers' compensation benefits based upon his knee injury, and an arbitrator issued a benefit determination finding Stapleton to have a 7% occupational disability. Halls filed a request for a de novo hearing before an ALJ. After additional proof was taken, the ALJ issued an opinion and award finding that Stapleton suffered from a 7% occupational disability, enhanced to 10.5% by virtue of Kentucky Revised Stat-

ute (KRS) 342.730(1)(c)1 and rejecting Halls' request for credit for overpayment of temporary total disability (TTD) payments. Halls' appeal to the Board was unsuccessful, after which Halls filed this petition for review.

■■■■ Halls' first argument is that the ALJ's finding that Stapleton suffers from a 7% occupational disability is not supported by objective medical evidence. A claimant bears the burden of proof as to each element of his claim. *Whittaker v. Rowland*, Ky., 998 S.W.2d 479, 481 (1999). If the claimant is successful before the ALJ, the "issue on appeal is whether substantial evidence supported the ALJ's conclusion." *Id.* Substantial evidence is "some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Id.* at 481–82.

■■ The medical evidence in this case was conflicting. The ALJ chose to rely on the diagnosis and opinion of Dr. Mark Siegel and to reject the opinions of the other physicians. Such action was entirely permissible as it is clear that the ALJ as the finder of fact has the "sole discretion to determine the quality, character, and substance of [the] evidence[,]" and "may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it came from the same witness or the same adversary party's total proof[.]" *Id.* at 481. *See also Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418, 419 (1985).

■■ In this case, Dr. Siegel examined Stapleton, took x-rays of Stapleton, and interpreted those x-rays to arrive at his diagnosis that Stapleton suffered from hypermobility of the patella and patellofemoral dislocation. The ALJ had the right to rely on Dr. Siegel's diagnosis, whether or not his diagnosis agreed with that of the other physicians. Halls' argument that Dr. Siegel's diagnosis is improper due to his combining two sections of the American Medical Association's (AMA) Guide-

lines in assessing a percentage of impairment for Stapleton is without merit. As noted by the Board on page ten of its opinion, "[c]ontrary to Halls['] assertions, there are places in the AMA Guidelines which permit the physician to combine percentages, as Dr. Siegel did in this case." The conclusion reached by the ALJ and affirmed by the Board is not the only one possible, but it is supported by substantial evidence and must, therefore, be affirmed. *Daniel v. Armco Steel Company, L.P.*, Ky. App., 913 S.W.2d 797, 798 (1995).

Halls' next argument is that it is entitled to a credit for overpayment of TTD. The ALJ and Board found that Stapleton was entitled to TTD from the date of his injury until December 26, 1997, when Dr. Richard Hoblitzell stated that Stapleton could return to work with no restrictions. Halls contends that Stapleton was not entitled to TTD after August 30, 1997, when Dr. Hoblitzell opined that Stapleton could return to work under certain restrictions.

■■ TTD is payable:

until the medical evidence establishes the recovery process, including any treatment reasonably rendered in an effort to improve the claimant's condition, is over, or the underlying condition has stabilized such that the claimant is capable of returning to his job, or some other employment, of which he is capable, which is available in the local labor market.

*W.L. Harper Construction Company, Inc. v. Baker*, Ky.App., 858 S.W.2d 202, 205 (1993). Entitlement to TTD is a question of fact. *Id.* Temporary total disability is statutorily defined as "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment." KRS 342.0011(11)(a).

■ Dr. Hoblitzell's August 30 report indicates that Stapleton could return to "modified duty" work at his regular hours, provided that: he did not lift more than ten pounds, did not kneel, did not bend or squat, and did not climb stairs. However, the president of Halls, Bret Hall, testified that he did not have any light duty jobs available for Stapleton. Furthermore, it is clear that one would have to kneel, squat, and bend over in order to perform the type of work in which Stapleton had engaged. As the Board noted, Stapleton's adult work history was in manual labor jobs, meaning that it would have been very difficult for him to return to any type of gainful employment on August 30, 1997. Finally, the ALJ had the right to reject Dr. Hoblitzell's opinion as to when Stapleton was able to return to work in the same manner he rejected Dr. Hoblitzell's ultimate diagnosis. In short, the ALJ's decision is supported by substantial evidence and must be affirmed. *Daniel, supra* at 800.

■ Finally, Halls argues that the ALJ erroneously computed the amount of weekly benefits to which Stapleton is entitled. Halls contends that the ALJ improperly used Stapleton's temporary total disability rate as a basis for his permanent partial disability award. Stapleton does not argue that the ALJ properly computed his weekly benefit amount. Rather, Stapleton agrees with the Board that this issue was not properly preserved for appellate review under the principles set forth in *Eaton Axle Corporation v. Nally*, Ky., 688 S.W.2d 334 (1985).

*Eaton Axle* held that a party was required to file a petition for reconsideration with the finder of fact before seeking appellate relief. *Id.* at 338. In 1994, however, the General Assembly effectively abrogated *Eaton Axle* when it amended KRS 342.281 to provide that "[t]he failure to file a petition for reconsideration shall not preclude an appeal on any issue." However,

this language was deleted from the statute in 1996. The Board determined that this deletion revived the holding of *Eaton Axle*, meaning that Halls had waived this issue by not including it in its petition for reconsideration.

■ The issue of the effect of the 1996 version of KRS 342.281 is apparently one of first impression. Statutory interpretation is a matter of law reserved for the courts and this Court is not bound by the Board's interpretation of the statute. *Commonwealth, Cabinet For Human Resources, Interim Office of Health Planning and Certification v. Jewish Hospital Healthcare Services, Inc.*, Ky.App., 932 S.W.2d 388, 390 (1996). The "cardinal rule" of statutory instruction is that the reviewing court must ascertain and give effect to the legislature's intent. *Id.* A court is not, however, to "speculate as to what the legislature intended." *Fiscal Court Commissioners of Jefferson County v. Jefferson County Judge/Executive*, Ky. App., 614 S.W.2d 954, 957 (1981).

■ It is clear the General Assembly intended to reinstate the requirement in *Eaton Axle* that a petition for reconsideration be filed in order to preserve an issue for appellate review. Certainly, the General Assembly intended for its 1996 amendment to the statute to have some effect, *Grieb v. National Bond & Investment Co.*, 264 Ky. 289, 94 S.W.2d 612, 617 (1936), and further the General Assembly is aware of previously enacted statutes and their common law interpretations. *Cook v. Ward*, Ky., 381 S.W.2d 168, 170 (1964). We cannot discern any logical meaning underpinning the 1996 amendments to KRS 342.281 other than a conscious decision by the General Assembly to return to the requirement that a petition for reconsideration must be filed before an issue is preserved for appellate review. Accordingly, the Board correctly held that the principles in *Eaton Axle* have been legislatively revived.

We do not believe that the Board "overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–8 (1992). The Board's decision is affirmed.

ALL CONCUR.