# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 13, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000237-WC

ROBIN D. WILSON                                          APPELLANT

             ON APPEAL FROM COURT OF APPEALS
V.                  CASE NO. 2015-CA-000477
           WORKERS' COMPENSATION NO. 11-WC-67145

DERBY CITY SIGN & ELECTRIC, INC.;                  APPELLEES
HONORABLE JANE RICE WILLIAMS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**REVERSING**

Appellant, Robin Wilson, appeals from a ruling of the Court of Appeals[1]

that reversed the decision of the Administrative Law Judge (ALJ) and the

Workers' Compensation Board (Board) awarding workers' compensation

benefits and medical expenses to Appellant as a result of a work-related

accident that injured his left ankle. Upon review, we reverse the Court of

Appeals and reinstate the Opinion of the Board.

---

[1] Although Judge Acree wrote the opinion expressing his rationale for reversing the Board, neither of the other judges on the panel joined. Judge Taylor concurred only in the result without a separate opinion; Judge D. Lambert dissented without an opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Wilson worked for Derby City Sign & Electric, Inc. installing and servicing commercial signs.  His job required heavy lifting and climbing extension ladders to work on the signs.  In August 2011, Wilson had been experiencing pain in his left foot, but there is no indication that his ability to work was affected by this condition.  He was examined by Dr. William Brown who diagnosed the problem as plantar fasciitis, a bone spur on the side of his foot, and heel pain syndrome.

Dr. Brown recommended surgery to remove the bone spur, but Wilson declined because the condition was troubling only when he shifted gears on his motorcycle.  Dr. Brown advised Wilson to return for follow-up treatment in three weeks, but Wilson did not do so.  Oddly, in the notes recorded for this visit, Dr. Brown erroneously refers to Wilson as a female.  Following this examination, Wilson continued to work without restrictions.

Three months later, on November 14, 2011, Wilson descended a ladder while working on a sign.  As he stepped off the ladder, his left foot landed on a root and his ankle "rolled" or, as the ALJ described it, "twisted."  Wilson felt a sharp pain that he described as "totally different" from the previous pain in his foot.  At least momentarily, he was unable to walk.  He crawled to his truck and after waiting a few minutes, he was able to retrieve tools, load his equipment, and return to the shop where he reported the incident to his supervisor.  The ALJ noted that surveillance video from the shop's security

2

cameras, "though mostly inconclusive, appears to show Wilson having difficulty walking, if anything."

Three days later, on November 17, 2011, Wilson went to Dr. Brown's clinic for treatment. He was examined there by Dr. Christopher Hubbard. Dr. Hubbard ordered an MRI of Wilson's left foot and ankle. As a result of this examination, Dr. Hubbard diagnosed Wilson's injury as a peroneus longus tendon tear in the left ankle requiring a surgical repair. On January 25, 2012, he performed the surgery needed to repair the tendon. Significantly, Dr. Brown's examination in August did not disclose the existence of a torn tendon, and there was no evidence that he anticipated the development of a torn tendon.

Dr. Hubbard's original notes from the November 17 examination of Wilson became a source of controversy because they are strikingly similar to the notes made by Dr. Brown the preceding August. For example, both sets of notes record: "Condition has existed for one month." Both sets state: "Onset was gradual." Both sets state: "Patient indicates irritation from direct pressure and prolonged walking and standing aggravate the condition." Both say: "Severity of condition is progressively worsening." Dr. Hubbard's notes repeat the statement found in Dr. Brown's notes: "Patient denies a previous history of trauma. The patient has had no previous treatment for this condition." Most telling, however, is the fact that Dr. Hubbard's notes also repeat Dr. Brown's clearly erroneous references to Wilson as a "female patient," referring to him throughout as "she."

3

The anomaly of Dr. Hubbard's original notes gives rise to Derby City's argument that Wilson's torn ankle tendon was not the result of the November occurrence, stepping off the ladder, but was instead "a worsening continuum of pain that began in July 2011," one month before the August diagnosis of plantar fasciitis, bone spur, and heel pain syndrome. The anomaly also cast doubt in the mind of the ALJ about the accuracy of the November 17 notes. She concluded that "the *initial* record from Dr. Hubbard is not found to be conclusive" on the issue of what caused the torn tendon. (Emphasis added.)

Derby City points out that Dr. Hubbard's original notes make no reference to Wilson's claim of a workplace injury due to stepping off a ladder three days prior; however, in February 2012, and well before this action commenced, Dr. Hubbard amended his original notes to reflect that Wilson did, in fact, report the ladder incident during the November 2011 examination.

Wilson's reparative surgery in January 2012 was followed by a six-week course of physical therapy. Dr. Hubbard released Wilson to return to work without restrictions on June 14, 2012. Wilson's private health insurance paid the medical expenses associated with his treatment up until his return to work and Wilson directly paid other necessary out-of-pocket costs of his medical treatment.

Soon after returning to work at Derby City, Wilson was laid off. He found another job at Glass Sign Company, where he worked without any medical restrictions for about five months. He next worked at Louisville Signs without

4

medical restrictions for about three months before taking a job with another sign company doing the same kind of work but with less lifting and climbing.

After he returned to work following surgery, Wilson continued to have pain and swelling in his left foot which worsened when he was more active. Specifically, the activities associated with his work—crouching, climbing ladders, and lifting heavy materials—became more difficult and more uncomfortable. On October 18, 2013, twenty-three months after the incident involving the ladder, Wilson filed a workers' compensation claim asserting that he had suffered a work-related injury to his "left foot/ankle" on November 14, 2011. Derby City denied Wilson's claim.

After considering the evidence, which included testimony and reports from several medical witnesses, and deciphering the inconsistencies of Dr. Hubbard's original notes from November 17, 2011, the ALJ made the following findings with respect to the issue of medical causation of Wilson's torn tendon:

> Wilson is a believable witness. He had seen Dr. Brown, Dr. Hubbard's partner, for a foot condition prior to the work injury but worked unrestricted with *no significant complaints until he twisted the ankle on November 14, 2011.* The surveillance video, though mostly inconclusive, appears to show Wilson having difficulty walking, if anything. The initial treatment record from Dr. Hubbard on [November] 17, 2011 notes a gradual onset but also refers to Wilson as a female all through the record. For this reason, the initial record from Dr. Hubbard is not found to be conclusive on this issue.
>
> ....
>
> *Additionally, Dr. Hubbard's later office notes state the condition is work related.* Dr. Loeb's report has been reviewed but his opinion on the causation is not adopted herein. The opinion of Dr. Farrage on work-relatedness/causation is not found to be any more helpful than that of Dr. Loeb on the issue. *It is the review of the records of*

5



*Dr. Hubbard along with the testimony of Wilson which have been persuasive on the issue of causation.*

(Emphasis added.) The ALJ plainly considered the conflicting medical opinions on whether Wilson's torn tendon and its surgical repair resulted from a workplace injury of November 14, 2011, or instead, was the worsening manifestation of the preexisting foot pain he had in August. In the final analysis, the ALJ agreed with Wilson and awarded benefits accordingly.

Derby City petitioned for a reconsideration of that opinion, arguing that the ALJ's findings on causation were not supported by substantial evidence. The petition was denied. Derby City next sought review by the Board, further arguing that the record lacked substantial medical evidence to support Wilson's claim that the work-related ladder incident caused the torn ankle tendon. The Board concluded "[i]n this instance, it was not so unreasonable for the ALJ to infer from the totality of the circumstances evidenced by the lay and medical testimony that Wilson's left ankle condition was caused by his work accident."

Derby City then appealed to the Court of Appeals. The Court of Appeals reversed the Board's decision in a plurality opinion lacking a single rationale supported by a majority of the appellate panel. Wilson appealed the case to this Court.

## II. STANDARD OF REVIEW

"An award or order of the administrative law judge . . . shall be conclusive and binding as to all questions of fact . . . ." KRS 342.285(1).

Accordingly, as the statutorily-assigned fact-finder, the ALJ "has the sole authority to determine the quality, character, and substance of the evidence." *Square D Company v. Tipton,* 862 S.W.2d 308, 309 (Ky. 1993) (citation omitted). Similarly, the "ALJ, as fact-finder, has the sole authority to judge the weight and inferences to be drawn from the record." *Miller v. East Kentucky Beverage/Pepsico, Inc.,* 951 S.W.2d 329, 331 (Ky. 1997) (citation omitted). The ALJ "may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Magic Coal Company v. Fox,* 19 S.W.3d 88, 96 (Ky. 2000) (citing *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky. 1977)); *Halls Hardwood Floor Company v. Stapleton,* 16 S.W.3d 327, 329 (Ky. App. 2000). Mere evidence contrary to the ALJ's decision is not adequate to require reversal on appeal. *Whittaker v. Rowland,* 998 S.W.2d 479, 482 (Ky. 1999) (citation omitted).

A decision of the Workers' Compensation Board shall be reversed on appeal only when "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hospital v. Kelly,* 827 S.W.2d 685, 687–88 (Ky. 1992).

### III. ANALYSIS

Wilson argues that the Court of Appeals erred in reversing the Board because substantial evidence in the record supports the ALJ's conclusion that

7

the torn tendon in his left ankle resulted from his work-related misstep from the ladder in November 2011. For the reasons explained below, we agree.

The ALJ declared Wilson to be a credible witness and she believed his testimony that he twisted his left ankle stepping off a ladder at work and felt pain in his left "foot/ankle" area that was "totally different" from the previous discomfort diagnosed earlier by Dr. Brown. Findings of the ALJ supported by substantial evidence are conclusive upon our review. KRS 342.285.

Derby City does not challenge the finding that Wilson twisted, or rolled, his ankle upon stepping off the ladder while at work. Derby City argues that the medical evidence did not support the ALJ's finding that the ladder incident caused the torn tendon. Derby City contends that the torn tendon was a manifestation of the preexisting foot conditions of plantar fasciitis, a bone spur and heel pain syndrome, for which Dr. Brown recommended surgery to remove the bone spur.

Evidence in the record, however, established that: (1) in August 2011, Wilson was diagnosed by Dr. Brown as having plantar fasciitis, a bone spur, and heel pain syndrome afflicting his left foot; (2) on November 14, 2011, Wilson twisted his left ankle stepping onto the ground from a ladder at work; (3) as reflected in Dr. Hubbard's amended notes, three days later Wilson told Dr. Hubbard about the workplace ankle injury; (4) Dr. Hubbard diagnosed Wilson's condition after the ladder incident as a torn tendon in his left ankle, a condition not observed or diagnosed by Dr. Brown when he saw Wilson the previous August; (5) the surgical intervention confirmed Dr. Hubbard's

8

diagnosis of a left peroneus longus tendon tear; (6) Dr. Hubbard opined within a reasonable degree of medical probability the ladder incident of November 2011 "could" have caused the torn tendon, and he further affirmed that such injury is frequently caused by an accidental twisting for rolling of the foot similar to the event experienced by Wilson; however, Dr. Hubbard also opined that the torn tendon "could" have been the "natural progression" of the preexisting symptoms Wilson experienced in August 2011, and that was what Dr. Hubbard "felt" he was dealing with at the November 17 examination.

As the claimant, Wilson had the burden of proof as to every element of his workers' compensation claim, including causation. *Magic Coal Company*, 19 S.W.3d at 96 (citations omitted). Medical causation must "be proved to a reasonable medical probability with expert medical testimony." *Brown–Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004). Moreover, in assessing medical probability, "it is the quality and substance of a physician's testimony, not the use of particular 'magic words,' that determines whether it rises to the level of reasonable medical probability, i.e., to the level necessary to prove a particular medical fact." *Id.* (citation omitted). "[W]here medical testimony is concerned, and that testimony is conflicting . . . the question of who to believe is one exclusively for the [ALJ]." *Pruitt v. Bugg Brothers*, 547 S.W.2d 123, 124 (Ky. 1977); *accord Brown–Forman Corp.*, 127 S.W.3d. at 621. "Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal."

9

*Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000) (citation omitted).

The obvious import of the medical evidence as construed by the ALJ is that a torn tendon is the kind of injury that can, and frequently does, result when someone twists (or "rolls") his ankle in circumstances that include stepping off a ladder. It logically follows that the torn tendon could reasonably have been determined to be a malady not caused by or associated with the plantar fasciitis, bone spur, and heel pain syndrome diagnosed in August. Based upon this combination of evidence, we conclude that there was substantial evidence in the record to support the ALJ's finding of causation - a peroneus longus tendon tear is a normal and medically foreseeably consequence of the event that Wilson experienced.

Wilson satisfied his burden of proof of establishing that the workplace incident caused his injury. In going forward with the evidence to establish a different cause, it becomes the burden of the employer to show that the injury is the product of a preexisting condition or other non-work-related injury. *Comair, Inc. v. Helton*, 270 S.W.3d 909, 914 (Ky. App. 2008) (citing *Finley v. DBM Technologies*, 217 S.W.3d 261, 265 (Ky. App. 2007)). And while there is no reason to doubt that Wilson had the preexisting conditions of plantar fasciitis, a bone spur, and heel pain syndrome condition, the evidence clearly established that those conditions, if they existed, were not actively impairing or impeding Wilson's ability to work immediately before the ladder incident. The preexisting condition relied upon by Derby City was not symptomatic in that it

10

was having no disabling effect on Wilson's ability to perform his work prior to November 2011. The evidence accordingly does not compel the conclusion that the torn tendon existed before the ladder incident.

When the party having the burden of proof on an issue fails to convince the ALJ, the ALJ's decision will withstand appellate review unless that party demonstrates to the appellate court that the evidence in its favor was so overwhelming as to compel a different finding. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Derby City failed to persuade the ALJ that Wilson's torn ankle was the result of, or a progressive manifestation of, his preexisting foot condition. To reverse that decision, Derby City must show that its evidence was so overwhelming as to compel a finding in its favor. *Id.*

We are not persuaded that the evidence in Derby City's favor compelled a finding in its favor so as to overturn the ALJ's opinion and the Court of Appeals erred in concluding otherwise. True enough, Dr. Hubbard tepidly opined that Wilson's preexisting ailments *could* have caused the torn tendon, but by the same measure, he also opined that Wilson's misstep from the ladder and the twisting, or "rolling," of his ankle *could* have caused the torn tendon, and both opinions are expressed as within a reasonable degree of medical probability.

The ALJ is assigned the responsibility of resolving the conflicting evidence based upon the totality of the evidence. *See Square D Company*, 862 S.W.2d at 309 ("Where, as here, the medical evidence is conflicting, the question of which evidence to believe is the exclusive province of the ALJ."). In light of Dr. Hubbard's equivocal testimony and all of the remaining evidence,

11

including Wilson's credible description of his injury and the undisputed fact that he had a torn tendon in his left ankle after experiencing a painful turn of his foot stepping off a ladder, the ALJ had sufficient basis to resolve the issue in Wilson's favor.

Derby City rejects the foregoing analysis because "the board is not justified in disregarding the medical evidence . . . where the causal relationship is not apparent to the layman . . . ." *Mengel v. Hawaiian-Tropic Northwest and Central Distributors, Inc.*, 618 S.W.2d 184, 187 (Ky. App. 1981). And Derby City contends that "the causal relationship in this case is not apparent to the layman." First, we are satisfied that neither the ALJ nor the Board disregarded the medical evidence. The record clearly discloses that the ALJ and the Board considered all of the medical evidence. More importantly, a reasonable layperson the least bit familiar with his own limbs and life's experiences can readily conceptualize how a twisted ankle can cause the kind of injury Wilson experienced, though he may not describe the injury in anatomically accurate nomenclature. Indeed, from a layperson's perspective, stepping off a ladder onto uneven ground and twisting, or "rolling," the left ankle appears to be a much more likely and plausible explanation for a torn tendon in the left ankle than the preexistent conditions of plantar fasciitis, a bone spur, and heel pain syndrome in the left foot.

## IV. CONCLUSION

For the foregoing reasons, the opinion of the Court of Appeals is reversed, and the decision of the ALJ awarding Wilson workers' compensation benefits is reinstated.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Joy Buchenberger
Jennings Law Offices

COUNSEL FOR APPELLEE DERBY CITY SIGN & ELECTRIC, INC.:

Douglas Anthony U'Sellis
U'Sellis Mayer & Associates

COUNSEL FOR APPELLEE HONORABLE JANE RICE WILLIAMS, ADMINISTRATIVE LAW JUDGE:

Jane Rice Williams
Rice, Hendrickson & Williams

COUNSEL FOR APPELLEE WORKERS' COMPENSATION BOARD:

Dwight Taylor Lovan
Executive Director
Office of Workers' Claims