RENDERED: NOVEMBER 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0550-WC

CARY DOBSON						APPELLANT


						PETITION FOR REVIEW OF A DECISION
v.					OF THE WORKERS' COMPENSATION BOARD
						ACTION NO. WC-18-79453


K & T SWITCHING; HONORABLE
GRANT ROARK, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD					APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

JONES, JUDGE:  Cary Dobson has petitioned this Court for review of a decision

of the Workers' Compensation Board (the Board), which affirmed the November

30, 2020 opinion, order, and award rendered by the Administrative Law Judge

(ALJ).  On appeal, Dobson asserts the Board erred when it affirmed the ALJ's

dismissal of Dobson's claim seeking benefits for his low back injury.  Having

reviewed the record in conjunction with all applicable legal authority, we affirm the Board.

## I. BACKGROUND

During the relevant time period, Dobson was employed by the Appellee, K & T Switching (K&T), as a switcher/driver. Dobson's primary job duty was to switch truck trailers in the docks at Ford Motor Company's Louisville, Kentucky, assembly plant. While on duty, Dobson had to switch a trailer approximately every fifteen to twenty minutes. Switching the trailers required Dobson to climb in and out of the trucks. On May 31, 2018,[1] Dobson fell while dismounting from one of the trucks. He experienced immediate pain in his knee and notified his supervisors at K&T.

K&T referred Dobson to Baptist Health Occupational Medicine ("Baptistworx") for treatment. Initially, Baptistworx restricted Dobson from returning to work due to an injury to his right knee and prescribed physical therapy. After Dobson's condition failed to improve, an MRI of Dobson's right knee was ordered. Following the MRI, Dobson was referred to Dr. Kittie George, a surgical orthopedist. Baptistworx's records do not reflect that Dobson made any complaints concerning his back while in treatment there.

---

[1] In its opinion, the Board incorrectly stated that the date of injury was May 31, 2019. A review of the underlying record, however, confirms that Dobson and K&T stipulated that the date of injury was May 31, 2018.

Dr. George diagnosed Dobson as having a complex right medial meniscus tear. She opined that Dobson's fall caused the tear. Dr. George recommended Dobson have surgery on his right knee to repair the tear, and she performed the surgery in June 2018. K&T provided temporary medical and wage-related compensation to Dobson as related to the initial tear, surgery, and recovery.

At first, Dobson seemed to be recovering well from his knee surgery. However, in January 2019, Dobson complained to Dr. George that he was experiencing more pain in his knee. Dr. George subsequently diagnosed Dobson as having a recurrent tear and recommended a second surgery. Dr. George performed the second surgery in June 2019. K&T did not accept liability for the second tear.

Dobson filed a Form 101 Application for Resolution of Injury Claim on February 8, 2019, alleging that he injured "multiple body parts" as a result of his May 31, 2018 fall. Dobson moved to bifurcate his claim to determine the threshold issue of whether the ongoing condition of his right knee and recommended second surgery were related to his work fall. The ALJ granted the motion and bifurcated Dobson's claim. Following an evidentiary hearing at which Dobson was the only witness and a review of the other evidence of record, including medical reports of Dr. George and Dr. Frank Bonnarens, the ALJ

determined that "the second tear and the need for the second surgery [were] work-related and compensable." Record (R.) at 315.

Thereafter, the parties participated in additional discovery related to the remaining portions of Dobson's claim. Dobson's alleged back injury is the only issue remaining as part of this appeal; accordingly, we will limit our discussion to the proof with respect to that portion of Dobson's claim.

Dr. George and Dr. Joseph Werner treated Dobson following his work injury. Dr. George submitted a written opinion letter stating that while she provided treatment primarily for Dobson's right knee, he had complained to her about neck and back pain. Dr. George referred Dobson to Dr. Werner for treatment for his neck and back. Dr. George affirmatively opined that: "based on [Dobson's] initial complaints of not only knee but also back and neck pain that all 3 [three] are directly related to his [May 31, 2018] fall." R. at 346. Dr. Werner provided a more detailed opinion as follows:

> Cary Dobson has been under treatment for injuries which occurred in a work accident documented to have occurred on May 31, 2018. I have been treating him for back, and to a lesser extent neck pain which resulted from that injury. He has an L4-5 spondylolisthesis and some associated degenerative findings along with mild degenerative changes in the cervical spine from which he never suffered major medical issues *i.e.* significant treatment or work absences. Since the accident in question he has obviously [been] busy with visits to Dr. George and to me, to physical therapy and has missed

-4-

work, not to mention continues to suffer lumbar back pain.

The L4-5 spondylolisthetic anatomic lesion was clearly pre-existing, yet the current severe symptoms were activated by the accident in question, and he remains under treatment for symptoms which resulted from that accident.

R. at 344.

In addition to his treating physicians, Dr. James Farrage and Dr. Robert Sexton submitted independent medical evaluation (IME) reports with respect to Dobson's back complaints. In his IME, Dr. Farrage opined that Dobson's altered gait following his two back surgeries "exacerbated [Dobson's] underlying conditions of cervical spondylosis and lumbar spondylolisthesis bring[ing] those conditions into a disabling reality." R. at 415. Dr. Sexton disagreed. He noted that Dobson's "symptoms do not correlate to his objective workup and [are] suggestive of malingering." Dr. Sexton opined that there was no objective medical documentation "to support that Mr. Dobson acquired a cervical or lumbar injury as a result of the work event of 5-31-2018." R. at 425.

Dr. Peter Kirsch conducted a physician peer review of Dobson's medical records. In his report, Dr. Kirsch noted that the first mention of any back pain in Dobson's records appeared in Dr. George's July 26, 2018 treatment notes. Ultimately, Dr. Kirsch concluded that Dobson's "cervical and lumbar complaints

are not related to the work injury of 05/31/2018 based on the information in [Dobson's] chart." R. at 111.

In addition to the medical proof, Dobson testified by deposition and during a final hearing before the ALJ. Dobson testified that before his May 31, 2018 work injury, he had not experienced any recurrent pain or problems with his back. After the work incident, Dobson stated that he began to have neck and low back pain. Dobson testified that he reported his back pain to Baptistworx and he does not know why his reports are not included in his initial treatment records. Dobson relayed that his back pain had gotten progressively worse. At the final hearing, Dobson described his back pain as a near constant "aching like a toothache," preventing him from sitting for any length of time. On cross-examination, Dobson admitted that about fifteen years prior to his May 2018 fall at work, he had chiropractic treatment for a back injury he sustained in a motor vehicle accident. On redirect, Dobson testified that the back injury he sustained in the motor vehicle accident had completely resolved well before his work fall in 2018.

Following his review of the evidence of record, the ALJ rendered a final opinion in which he concluded that Dobson failed to prove that his current back problems were caused by his May 31, 2018 work fall. In pertinent part, the ALJ's opinion provides:

As this claim now stands, the compensability of [Dobson's] right knee condition has already been established. However, the parties disagree as to whether [Dobson's] alleged lower back condition is causally related to the effects of his May 31, 2018 injury. [K&T] maintains [Dobson] did not report any lower back symptoms until three months after the work injury and that his current lower back complaints are due to unrelated, age appropriate degenerative conditions not caused or worsened by the work injury. In support of its position, [K&T] relies on its experts, Dr. Kirsch and Dr. Sexton, each of whom concluded [Dobson] had no identifiable lumbar injury that could be related to the May 31, 2018 incident. For his part, [Dobson] relies on the opinions of his treating physicians, Dr. George and her partner, Dr. Werner, who each concluded [Dobson's] preexisting lumbar degenerative changes were made symptomatic by the May 31, 2018 incident.

. . . .

In considering the issue of causation in a case such as this, the Administrative Law Judge considers the opinions of the treating physician(s) especially carefully, as a treating physician is usually most familiar with the onset and etiology of their patient's complaints. In this case, both Dr. George and Dr. Werner concluded [Dobson's] neck and back problems were causally related to the May 31, 2018 work injury. However, as [K&T] points out, there is no record of any complaints of lower back pain until September 4, 2018, more than three months after the work injury. Prior to September 4, 2018, [Dobson] was treated at Baptistworx at least six times and had seen Dr. George twice, and none of those records mention any complaints of lower back pain. In addition, Dobson's physical therapy notes after the injury also make no mention of any lower back complaints. Given this quite significant lapse in time before the first documented complaints of lower back

pain, Dr. Werner's, Dr. George's, and. Dr. Farrage's naked conclusions as to causation are not especially persuasive. Neither treating physician explained how the work injury could have aroused pre-existing dormant degenerative lumbar changes and not be reported for over three months afterward.

Similarly, Dr. Farrage explained how the mechanism of the work injury could have caused the lumbar complaints, but he also failed to explain why Dobson reported no symptoms for over three months following the work injury.

Given these facts, the ALJ is simply not persuaded Dobson has carried his burden of proving his lower back condition is work related, as none of his experts provided any meaningful opinion on causation that links the mechanism of injury to the lower back complaints and explains the 3+ month delay in reporting symptoms. The ALJ is fully aware that [Dobson] testified he tried to report his back problems when initially treated at Baptistworx but they would not listen to him. However, the ALJ finds it difficult to credit that [Dobson] would have continually reported back pain and that such complaints would continue to be ignored and not documented. Moreover, his purported explanation does not touch upon why Dr George's records do not document any complaints of lower back pain in his first two treatments with her. For these reasons, it is determined [Dobson] has not carried his burden of proving [a] work-related lower back condition, and that portion of his claim must be dismissed.

R. at 549-50.

Dobson appealed to the Board. The Board affirmed the ALJ's conclusion that Dobson's back condition was not related to the work injury as follows:

-8-

Dobson appeals, arguing the ALJ committed reversible error by dismissing his claim for a lumbar injury. As the claimant in a workers' compensation proceeding, Dobson had the burden of proving each of the essential elements of his claim. *Snawder v. Stice*, 576 S.W.2d 276 (Ky. App. 1979). Because Dobson was not successful in his burden, the question on appeal is whether the evidence compels a different result. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984). "Compelling evidence" is defined as evidence that is so overwhelming, no reasonable person could reach the same conclusion as the ALJ. *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky. App. 1985).

KRS[2] 342.285 grants an ALJ as fact finder the sole discretion to determine the quality, character, and substance of evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308 (Ky. 1993). An ALJ may draw reasonable inferences from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Jackson v. General Refractories Co.*, 581 S.W.2d 10 (Ky. 1979); *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15 (Ky. 1977). Although a party may note evidence supporting a different outcome than reached by an ALJ, such proof is not an adequate basis to reverse on appeal. *McCloud v. Beth Elkhorn Corp.*, 514 S.W.2d 46 (Ky. 1974). Rather it must be shown there was no evidence of substantial probative value to support the decision. *Special Fund v. Francis*, 708 S.W.2d 641 (Ky. 1986).

The function of the Board in reviewing an ALJ's decision is limited to a determination of whether the findings made are so unreasonable under the evidence they must be reversed as a matter of law. *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000).

---

[2] Kentucky Revised Statutes.

The Board, as an appellate tribunal, may not usurp the ALJ's role as fact finder by superimposing its own appraisals as to weight and credibility or by noting other conclusions or reasonable inferences that otherwise could have been drawn from the evidence. *Whittaker v. Rowland*, 998 S.W.2d 479 (Ky. 1999).

We note that neither party filed a Petition for Reconsideration. In the absence of a Petition for Reconsideration, on questions of fact, the Board is limited to a determination of whether substantial evidence in the record supports the ALJ's Conclusion. Stated otherwise, where no Petition for Reconsideration was filed prior to the Board's review, inadequate, incomplete, or even inaccurate fact finding on the part of an ALJ will not justify reversal or remand if there is substantial evidence in the record supporting the ALJ's ultimate conclusion. *Eaton Axle Corp v. Nally*, 688 S.W.2d 334 (Ky. 1985); *Halls Hardwood Floor Co. v. Stapleton*, 16 S.W.3d 327 (Ky. App. 2000). Thus, our sole task on appeal is to determine whether substantial evidence supports the ALJ's decision. We conclude it does.

The ALJ was confronted with conflicting medical evidence on the issue of whether Dobson suffered a lumbar injury as a result of the work incident of May 31, 2018. The ALJ specifically noted he did not find the evidence from Dr. Werner, Dr. George, and Dr. Farrage persuasive and deemed their opinions "naked conclusions" as none of the physicians explained how the mechanism of injury could have aroused pre-existing dormant conditions, not be reported to a medical provider for three months, and cause no symptoms for over three months after the work incident. In addition, the record contains substantial evidence in the form of the opinions of Drs. Sexton and Kirsch that Dobson did not suffer a lumbar spine injury as alleged.

-10-

> We believe the ALJ properly exercised his discretion in determining Dobson did not meet his burden of proving his lumbar spine condition was caused by the work-related incident of May 31, 2018. The decision is supported by substantial evidence and a contrary result is not compelled.

R. at 607-09.

This appeal followed.

## II. STANDARD OF REVIEW

Pursuant to KRS 342.285, the ALJ is the sole finder of fact in workers' compensation claims. Our courts have construed this authority to mean the ALJ has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence and to draw reasonable inferences from that evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974). Moreover, an ALJ has sole discretion to decide whom and what to believe and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). On review, neither the Board nor the appellate court can substitute its judgment for that of the ALJ as to the weight of evidence on questions of fact. *Shields v. Pittsburgh and Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky. App. 1982).

If the fact-finder finds in favor of the person having the burden of proof, the burden on appeal is only to show that there was some substantial evidence to support the decision. *See Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). However, if the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding." *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005).

On appeal, our role is to correct the Board only where the "Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *ViWin Tech Windows and Doors, Inc. v. Ivey*, 621 S.W.3d 153, 157 (Ky. 2021) (quoting *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

### III. ANALYSIS

Dobson, as the claimant, had the burden of proving every element of his claim, including causation. *Wilkerson v. Kimball International, Inc.*, 585 S.W.3d 231, 235 (Ky. 2019) (citing *Gibbs v. Premier Scale Co./Ind. Scale Co.*, 50 S.W.3d 754, 763 (Ky. 2001)). Because the ALJ found against Dobson with respect whether his work-related fall caused his low back injury, and because he carried the burden of proof, Dobson must establish on appeal that the favorable evidence was so overwhelming as to compel a finding in his favor. *Wilkerson*, 585 S.W.3d

at 236. "Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012).

On appeal, Dobson posits that the ALJ and the Board erred because "there is simply no other contributing factor in the record that could be blamed for [his] current disabling condition in the lower back." He goes on to cite various portions of Dr. Farrage's medical opinion which he claims compels a decision in his favor.

While Dobson has pointed to evidence which supports a finding in his favor, he has failed to demonstrate that the record as a whole compels such a result. Most problematic for Dobson, Dr. Sexton, who examined Dobson, explicitly stated in his opinion that he believed Dobson was possibly malingering as his "symptoms do not correlate to his objective workup." Ultimately, Dr. Sexton concluded that the work incident on May 31, 2018 did not cause Dobson to suffer a cervical or lumbar injury.

The ALJ's opinion demonstrates that he reviewed all the relevant medical evidence in conjunction with Dobson's testimony. Having done so, the ALJ placed more weight on the opinions of Drs. Sexton and Kirsch than he did on the opinions of Drs. George, Werner, and Farrage. This was the ALJ's prerogative. Even though we might have reached a different conclusion, we are

not at liberty to substitute our opinion for that of the ALJ where it is clear that the ALJ reached a reasoned conclusion supported by competent evidence of record. Accordingly, we cannot hold that the Board erred when it affirmed the ALJ.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Workers' Compensation Board's opinion of April 16, 2021.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ched Jennings
Louisville, Kentucky

BRIEF FOR APPELLEE:

Lyn Douglas Powers
Louisville, Kentucky