RENDERED: FEBRUARY 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1344-MR

RANDOLPH HOWELL                                          APPELLANT

v.

APPEAL FROM FLEMING CIRCUIT COURT
HONORABLE STOCKTON B. WOOD, JUDGE
ACTION NO. 16-CI-00127

PEOPLES COVERAGE, INC.;
GREGORY SCOTT COMPTON;
PROGRESSIVE COMMERCIAL
CASUALTY COMPANY; AND
UNITED FINANCIAL CASUALTY
COMPANY                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE: This is an appeal from a declaratory judgment order of the
Fleming Circuit Court. A review of the record reveals numerous other orders of
the court were not made final and appealable and did not finally adjudicate any
claim as to any party. Thus, the sole Order being reviewed on this appeal is the

October 2, 2020 order. No one asserts that this is not a final and appealable order under CR[1] 54.02(1). For reasons we will outline below, we affirm the ruling of the Fleming Circuit Court.

## FACTUAL BACKGROUND

This case initially stems from a motor vehicle collision that occurred in 2015 when Reed, operating a tow truck, ran a red light and collided with a motorcyclist, Howell, causing serious injuries. At the time of this collision, Reed insured that 1992 Chevrolet rollback tow truck with Progressive, under a commercial policy underwritten by United Financial Casualty Company (for ease throughout the Opinion, we will refer to both parties together as the "insurers"). Gregory Compton ("Compton") and Peoples Coverage were the agent and employer of the agent, respectively, who accepted the application (we will refer to both simply as the "agent"). All parties agree that the written policy had a liability limit of only $25,000, the state minimum limit.

Howell filed suit against Reed, and the parties resolved that case by entry of an agreed judgment for $4.5 million. However, Howell agreed not to execute upon that judgment as to Reed. In exchange, Reed assigned to Howell his rights as to any claims against the insurers and/or the agent. Of course, Howell then filed a lawsuit alleging negligence claims against the insurers and the agent;

---

[1] Kentucky Rule of Civil Procedure.

including failure to properly advise Reed, failure to fully and properly insure the vehicle, and failure to comply with the provisions of KRS[2] 281.010, for a motor carrier vehicle.

Some other pertinent facts are worth noting. The insurance application stated that Reed sought to purchase coverage for a rollback truck. He did not have a DOT[3] number when he applied with the agent, and the application affirmatively stated that no state or federal filings were required. However, the application did state that this vehicle would be used for towing or hauling vehicles. The record indicates that Reed asked the agent how much insurance was needed and he was told that $25,000 was all that was required. Reed applied to the DOT for his DOT number a few days after the application was approved. No other insurance was requested of the carrier, and the DOT application was apparently not communicated to the insurers or agent. The collision occurred a month after the application for insurance. Reed was not towing a vehicle or hauling anything when the accident occurred. However, the record does indicate that he had begun intrastate hauling or towing of vehicles within that time frame.

After the prior lawsuit and settlement, with the assignment of the claims against the insurers and agent, the insurers and agent filed a declaratory

---

[2] Kentucky Revised Statute.

[3] United States Department of Transportation.

judgment counterclaim in this action, asking the trial court to address the issue of the correct amount of coverage required under these facts. The court's ruling on the declaratory judgment is the sole issue in this appeal.

## STANDARD OF REVIEW

This matter involves a review of questions of law as to the applicability of and interpretation of a statute in determining the correct amount of coverage required for the tow truck. Questions of law and matters of statutory construction are reviewed *de novo* on appeal. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citation omitted). *See also Halls Hardwood Floor Co. v. Stapleton*, 16 S.W.3d 327, 330 (Ky. App. 2000).

## ANALYSIS

The Fleming Circuit Court issued two specific rulings on the questions of law presented by the declaratory judgment filing. First, the court held that KRS 304.39-100 requires the $25,000 minimum liability insurance limit be afforded to the tow truck. Second, the court held that "If the . . . tow truck required proof of financial responsibility under KRS 281.655 for intrastate use, that amount is $100,000. Towing a motor vehicle does not constitute the transportation of hazardous materials."

Appellant asks this Court to reverse the declaratory judgment order and find that the tow truck required proof of financial responsibility under

KRS 281.655. He further asks that we rule that a minimum of $1 million in liability insurance coverage was required for the tow truck because it hauls motor vehicles which, he argues, constitute "hazardous materials." Finally, he asks that we direct that the $25,000 policy be amended to conform to the law and substitute $1 million for those minimum limits. We will address each of these requests in the order presented.

## I. Minimum Liability Insurance Limits

Motor vehicle insurance requirements are detailed in KRS 304.39, the Kentucky Motor Vehicle Reparations Act ("MVRA"), which is generally applicable to all "regular" motor vehicles owned or operated within the Commonwealth. No one disputes that the minimum limits of $25,000 contained within the statute would be required for any motor vehicle. However, Appellant argues that tow trucks, designed for the business of hauling motor vehicles, are required to carry $1 million in coverage because the hauled motor vehicles would be cargo and therefore constitute hazardous materials. In short, Appellant argues, in part, that the trial court should not have applied the MVRA because the tow truck does not fit the definition of a motor vehicle under the MVRA. We disagree.

KRS 304.39-020(7) defines a motor vehicle as "any vehicle which transports persons or property upon the public highways" then lists specific

exceptions, which would not apply to this vehicle.[4]  KRS 304.39-110 sets forth the required minimum tort liability insurance for the use of any motor vehicle in the Commonwealth.  The trial court did not err in determining as a matter of law that this rollback tow truck required at least the minimum liability limits of $25,000 under KRS 304.39-110.

However, there is a difference between mandatory minimum liability insurance limits under the MVRA and the financial responsibility requirements upon a motor carrier under KRS 281.655.  The MVRA applies to all motor vehicles and provides insurance requirements for motor vehicles operated within the state.  When a person or business wishes to operate as a motor carrier, there is a further requirement of proof of financial responsibility under KRS 281.655.  Appellant's further argument is that the trial court should have held that the agent should have advised Reed to purchase additional insurance beyond what is

---

[4] Such exemptions include,

> road rollers, road graders, farm tractors, vehicles on which power shovels are mounted, such other construction equipment customarily used only on the site of construction and which is not practical for the transportation of persons or property upon the highways, such vehicles as travel exclusively upon rails, and such vehicles as are propelled by electrical power obtained from overhead wires while being operated within any municipality or where said vehicles do not travel more than five (5) miles beyond the said limits of any municipality.

KRS 304.39-020(7).

required by the MVRA based upon some answers to questions posed by the agent that might have indicated his plan to use the tow truck as a motor carrier.

## II. Motor Carriers

Chapter 281 of the Kentucky Revised Statutes deals with "motor carriers," which are defined as "any person . . . who owns [or] operates . . . any motor vehicle for the transportation of passengers or property upon any highway, and any person who engages in the business of . . . U-Drive-It." KRS 281.010. When a person or business wishes to operate as a motor carrier, proof of financial responsibility is required in an amount that is determined upon three criteria: 1) whether the motor carrier will be operating interstate or intrastate, 2) the commodity to be hauled, and 3) the gross vehicle weight. "The obvious purpose of the statute is to require of all motor carriers financial responsibility in the case of injuries or damages sustained by third persons as a result of the negligent operation of their trucks." *Allen v. Canal Ins. Co., Greenville, S.C.*, 433 S.W.2d 352, 355 (Ky. 1968).

There is no question that the motor carrier in this instance did not provide the proof of financial responsibility required for a motor carrier's intrastate use of a tow truck. Whether that failure or breach of duty will be placed upon the insurers or agent, as opposed to the motor carrier, has not yet been addressed by the trial court.

Similarly, the issues of negligence raised by Howell's complaint are not before this Court. Instead, the trial court considered only the questions raised by the declaratory judgment counterclaim and concluded that **if** the 1992 Chevrolet rollback truck required proof of financial responsibility under KRS 281.655 for intrastate use, **then** the amount is $100,000. Thus, the trial court's interpretation of the statute is the sole question before us.

Appellant contends that the act of towing a motor vehicle constitutes "transporting hazardous material." Pursuant to KRS 281.655(6), that interpretation would require the motor carrier to then provide financial responsibility liability limits of not less than $1 million for any one accident or occurrence. The trial court did not agree and specifically held that towing a motor vehicle does not constitute the transportation of hazardous materials. We agree.

In support of the contention that a towed vehicle would constitute hazardous material, Appellant relies upon regulations of the federal transportation department and the provisions of 49 U.S.C.A.[5] § 5101. Generally, the statute lists eight classes of hazardous materials and includes a ninth miscellaneous class. 49 U.S.C.A. § 5103. The tow truck involved in this accident, even if it were towing another vehicle at the time of this accident, clearly would not qualify under any of the eight classes of hazardous materials contained in the statute. Appellant

---

[5] United States Code Annotated.

-8-

argues that a towed vehicle should qualify as a class nine "miscellaneous hazard," but we do not find Appellant's reliance upon federal regulations or the Congressional record sufficient to determine that the trial court's interpretation was in error. In fact, nothing in 49 C.F.R.[6] § 172 supports the conclusion that a single-engine gas-powered automobile transported within a single state of the United States constitutes transporting material "in a particular amount and form" so as to "pose an unreasonable risk to health and safety or property." *Id.* § 5103(a).

Moreover, we find that this case can be determined by consideration of Kentucky's motor carrier statute alone. KRS 281.655(4) requires minimum liability limits of only $100,000 for a motor carrier of 18,000 pounds or less. Even a tanker vehicle carrying less than 10,000 pounds in gasoline would not be required to have $1 million in coverage. KRS 281.655(5).[7] Finally, KRS 281.655(6) specifically states that hauling petroleum or petroleum products under 10,000 pounds is not considered hauling hazardous materials. Based upon the clear language of KRS 281.655, the trial court concluded that the hauling

---

[6] Code of Federal Regulations.

[7] This provides, in pertinent part, "[a]ny person, firm, or corporation operating or causing to be operated any vehicle for the transportation of petroleum or petroleum products *in bulk* in amounts less than ten thousand (10,000) pounds shall have . . ." $100,000 in insurance for the death of or injury to any one person and $300,000 total liability for death of or injury to persons. (Emphasis added.)

operation of a tow truck with a single vehicle upon it would similarly not be considered the hauling of hazardous materials.

Such a question is a matter of statutory interpretation and consequently a question of law only. The proper standard of review of a question of law does not require the adoption of the decision of the trial court as to the matter of law, but does involve the interpretation of a statute according to its plain meaning and its legislative intent. *See Floyd Cty. Bd. of Educ. v. Ratliff*, 955 S.W.2d 921 (Ky. 1997); *Reis v. Campbell Cty. Bd. of Educ.*, 938 S.W.2d 880 (Ky. 1996); and *Hardin Cty. Sch. v. Foster*, 40 S.W.3d 865, 868 (Ky. 2001).

We agree with the trial court that the hauling or towing of a single automobile intrastate does not constitute the transportation of hazardous materials so as to trigger the application of KRS 281.655(6) and require $1 million in coverage. As Appellant concedes, under 49 U.S.C.A. § 5125 and 49 C.F.R. § 171.1(f), Kentucky does have the right to set financial responsibility requirements for motor carriers and it has exercised that right with KRS 281.655. The trial court did not err in determining that the statute as applied to these facts requires only $100,000 in financial responsibility.

We also point out that the provisions of KRS Chapter 281 place obligations upon the <u>motor carrier</u>. The penalties are against the motor carrier for failure to comply and provide the required financial responsibility. It is not before

-10-

this court to determine whether the obligations upon a motor carrier to comply with the financial responsibility requirements of KRS Chapter 281 can be placed upon the insurers or agent. The trial court determined that there were material issues of disputed fact, for a jury to determine, with respect to the agent's duty to advise on the amount of coverage necessary to comply with the statutory proof of financial responsibility requirements. With that, we agree.

The court below ruled solely on the declaratory judgment counterclaim at this stage, finding that the intrastate towing of a vehicle simply does not constitute hauling of hazardous materials. The court further clarified that the minimum limit of financial responsibility, if required of the motor carrier in this instance, was $100,000 under KRS 281.655. Even through the lens of *de novo* review, we do not find that determination to be in error and we affirm the judgment of the Fleming Circuit Court.

CALDWELL, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

JONES, JUDGE, CONCURRING: At issue in this appeal is the minimum amount of insurance coverage Reed needed to have in place before he could lawfully operate his tow truck to haul other vehicles in Kentucky. The trial court concluded that the required minimum liability insurance was $25,000 under KRS 304.39-110, but that if Reed wanted to operate the tow truck intrastate to haul

-11-

other vehicles, KRS 281.655 requires proof of financial responsibility up to $100,000. The trial court, however, rejected Appellant's argument that towing another vehicle constitutes the hauling of hazardous material such that Reed would have been required to show proof of financial responsibility up to $1,000,000.

The trial court also rejected Appellant's assertion that the policy should be reformed to reflect the higher coverage as a matter of law, determining instead that there were material issues of disputed fact with respect to the agent's duty to advise on the amount of coverage necessary to comply with KRS 281.655's proof of financial responsibility requirements. Specifically, the trial court ordered that phase one of the bifurcated trial will focus on the "issue of whether the insurance companies/agent(s) were negligent/erred in not advising the tow truck owner/driver Melvin Reed that $100,000 was the minimum required coverage, and if so, what amount of coverage would likely have been purchased."[8]

The parties agree that under the MVRA, the minimum amount of liability coverage is $25,000. The only real dispute at this point is whether Reed's tow truck business hauled hazardous materials such that the required proof of

---

[8] The trial court has indicated that in the event the jury determines that the minimum coverage required was negligently misadvised by the insurance company or its agent, "then public policy requires that the insurance policy not be voided – rather, that a 'fair term' be inserted (as to the amount of the coverage which would likely have been purchased."

-12-

financial responsibility was $1,000,000 as opposed to $100,000.[9] On appeal, Appellant argues that hauling another vehicle is, as a matter of law, the transporting of hazardous material such that the trial court should have issued a declaration that Reed was required to have coverage of one million dollars in place.

Under KRS 281.010(33), "'Motor carrier' means any person in either a private or for-hire capacity who owns, controls, operates, manages, or leases, except persons leasing to authorized motor carriers, any motor vehicle for the transportation of passengers or property upon any highway, and any person who engages in the business of automobile utility trailer lessor, vehicle towing, driveaway, or U-Drive-It[.]" The facts adduced before the trial court indicated that Reed was using his tow truck to transport property such that he would be considered a motor carrier for the purpose of KRS 281.010(33). As such, it is undisputed that Reed should have been required to have on file with the Department of Transportation "one (1) or more approved indemnifying bonds or insurance policies issued by some surety company or insurance carrier authorized

---

[9] Again, I reiterate that whether the agent was responsible for advising Reed to purchase coverage beyond what is required by the MVRA has not yet been determined at the trial court level. The trial court has explicitly determined that "[t]he [c]ourt believes whether Defendant(s) met a standard duty of care in advising Reed as to whether $25,000 or $100,000 in coverage was needed for the tow truck, based on the information provided by Reed, is a question of fact for the jury."

to transact business within the Commonwealth of Kentucky" demonstrating Reed's proof of financial responsibility.[10]  KRS 281.655(1).

The operative question before us is the amount of financial responsibility Reed was required to have in place given his plan to use his tow truck to haul other vehicles intrastate.  KRS 281.655(4) lists "the types and minimum amounts of insurance to be carried on each vehicle[.]"  Appellant asserts that KRS 281.655(6) is applicable because hauling another vehicle constitutes the transport of hazardous materials:

> Any person, firm, or corporation operating or causing to be operated any vehicle for the transportation of hazardous material as defined in KRS 174.405, except petroleum or petroleum products in bulk in amounts less than ten thousand (10,000) pounds, shall have on each vehicle single limits liability insurance coverage of not less than one million dollars ($1,000,000) for all damages whether arising out of bodily injury or damage to property as a result of any one (1) accident or occurrence.

KRS 281.655(6).  The trial court rejected this argument.  It reasoned Reed's use of the tow truck to haul other vehicles did not require the "transportation of hazardous material" meaning that Reed was only required to show financial responsibility of up to $100,000 for the death or injury of one person.  KRS 281.655(4).

---

[10] Again, whether the insurance company and/or its agent had a duty to advise Reed of this requirement has been determined by the trial court to be an issue of fact for the jury.  I agree.  I do not believe this Court should opine on whether Reed should have been advised to purchase coverage exceeding that required by the MVRA.  I believe the scope of the duty requires a consideration of the specific conversation between Reed and the agent.

"Hazardous material" is defined in KRS 174.405(2) as:

> *a substance* designated hazardous by the Federal Hazardous Materials Transportation Law (49 U.S.C. sec. 5101 et seq.) and regulations issued pursuant thereto, including but not limited to hazardous and radioactive waste, but shall not include agricultural wastes, coal mining wastes, utility waste (fly ash, bottom ash, scrubber sludge), sludge from water treatment and sewage treatment facilities, cement kiln dust, gas and oil drilling muds, oil production brines or waste oil.

KRS 174.405(2) (emphasis added).

I believe the operative word in the above definition is "substance." As used in this context, a substance means a "matter of particular or definite chemical constitution." *Substance*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/substance (last visited Jan. 7, 2022). Although a vehicle may contain various substances (such as petroleum, water, and oil, to name a few), it is not a discrete substance. Therefore, even though the federal regulations cited to by Appellant might include a vehicle as a Class 9 hazardous material under 49 C.F.R § 172.101, I cannot agree that the Kentucky statute requires us to *per se* treat a vehicle in its finished form as a hazardous material.

Rather, I believe the intent behind the statute is that we must consider whether the vehicle contains any hazardous substances. In this case, it does. As noted by Appellants, a vehicle contains both oil and gas, which are petroleum products. However, problematic for Appellants, Kentucky's statute excludes

-15-

"petroleum or petroleum products in bulk in amounts less than ten thousand (10,000) pounds[.]" KRS 281.655(6). Since Reed would not have been using his tow truck to transport petroleum of over ten thousand pounds, the trial court correctly determined that KRS 281.655(6)'s one-million-dollar requirement would not have been applicable. I believe this interpretation is consistent with 49 C.F.R. § 387.9, which distinguishes between the intrastate transport of hazardous materials in bulk and in any form: "For-hire and Private (In interstate or foreign commerce, in any quantity; or *in intrastate commerce, in bulk only*; with a gross vehicle weight rating of 10,001 or more pounds)[.]" (Emphasis added.)

Accordingly, for the reasons set forth above, I agree with the majority's conclusion that $100,000 is the correct amount of financial responsibility Reed would have been required to show pursuant to KRS 281.655(4). Likewise, I agree with the trial court's determination that the insurance company's and its agent's duties with respect to the amount of insurance they should have advised Reed to purchase are questions of fact that must be decided by the jury based on the specific circumstances of this case.

BRIEFS FOR APPELLANT:

Bartley K. Hagerman
M. Austin Mehr
Elizabeth A. Thornsbury
Lexington, Kentucky

BRIEF FOR APPELLEE UNITED
FINANCIAL CASUALTY
COMPANY:

Christopher M. Mussler
Louisville, Kentucky

BRIEF FOR APPELLEES PEOPLES
COVERAGE, INC. AND GREGORY
SCOTT COMPTON

Patrick L. Schmeckpeper
Susan L. Maines
Lexington, Kentucky